## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANDREW BROOCKMANN**, on behalf of himself and all others similarly situated,<br><br>                          Plaintiff,<br>     v.<br><br>**THE BANK OF GREENE COUNTY**,<br>                          Defendant. | Case No.    1:22-cv-390 (MAD/ATB)<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Andrew Broockmann, by counsel, and for his Class Action Complaint against the Defendant Bank of Greene County, alleges as follows:

### INTRODUCTION

1.      Plaintiff brings this action individually and on behalf of all similarly situated consumers against Defendant The Bank of Greene County ("BOGC" or "Bank"), arising from its routine practice of assessing an overdraft fee ("OD Fee") on transactions that did not actually overdraw checking accounts.

2.      BOGC's customers have been injured by the Bank's improper practices to the tune of millions of dollars bilked from their accounts in violation BOGC's clear contractual commitments.

3.      Plaintiff, on behalf of himself and Classes of similarly situated consumers, seeks to end BOGC's abusive and predatory practices and force it to refund all of these improper charges. Plaintiff asserts a claim for breach of contract, including breach of the covenant of good faith and fair dealing, and seeks damages, restitution, and injunctive relief, as set forth more fully below.

### PARTIES

4.      Plaintiff is a citizen and resident of Hudson, New York.

5.      Defendant BOGC is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Classes. BOGC has its headquarters in Catskills, New York and operates banking branches throughout New York.

1

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction of this action, among other reasons, under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed class resides outside of Colorado; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because BOGC is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### BOGC CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT

8.      Plaintiff has a checking account with BOGC.

9.      BOGC issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for purchases, payments, withdrawals, and other electronic debit transactions.

10.      Pursuant to its Account Documents, BOGC charges fees for transactions that purportedly result in an overdraft.

11.      Plaintiff brings this cause of action challenging BOGC's practice of charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

12.      Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, BOGC immediately reduces accountholders' checking accounts by the amount of the purchase, sets aside funds in a checking account to cover that transaction,

and as a result, the accountholder's displayed "available balance" reflects that subtracted amount. Therefore, customers' accounts will always have sufficient available funds to cover these transactions because BOGC has already sequestered these funds for payment.

13.    However, BOGC still assesses crippling OD Fees on many of these transactions and misrepresents its practices in its Account Documents.

14.    Despite putting aside sufficient available funds for debit card and other POS transactions at the time those transactions are authorized, BOGC later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance. These types of transactions are APPSN Transactions.

15.    BOGC maintains a running account balance in real time, tracking funds accountholders have for immediate use. This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, BOGC sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance. Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

16.    That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

17.    Still, despite keeping those held funds off-limits for other transactions, BOGC improperly charges OD Fees on those APPSN Transactions, even though the APPSN Transactions ***always*** have sufficient available funds to be covered.

18.    Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

19.    There is no justification for these practices, other than to maximize BOGC's OD Fee revenue. APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance. But BOGC is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year. But BOGC was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on these APPSN Transactions.

20.    Besides being unfair and unjust, these practices breach contract promises made in BOGC's adhesion contracts—contracts which fail to inform accountholders about the true nature of BOGC's processes and practices. These practices also exploit contractual discretion to gouge accountholders.

4

21.     In plain, clear, and simple language, the Account Documents covering OD Fees promise that BOGC will only charge OD Fees on transactions that have insufficient funds to cover that transaction.

22.     In short, BOGC is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

### A.     *Mechanics of a Debit Card Transaction*

23.     A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from BOGC. When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary, to BOGC, which verifies that the customer's account is valid and that sufficient available funds exist to cover the transaction amount.

24.     At this step, if the transaction is approved, BOGC immediately decrements the funds in an accountholder's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

25.     Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 29, 2009).

26.     Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.

27.    BOGC (like all banks and credit unions) decides whether to "pay" debit card transactions at authorization. After that, BOGC is obligated to pay the transaction no matter what. For debit card transactions, that moment of decision can only occur at the point of sale, at the instant the transaction is authorized or declined. It is at that point—and only that point—when BOGC may choose to either pay the transaction or decline it. When the time comes to actually settle the transaction, it is too late—the financial institution has no discretion and must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand, regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046 (Nov. 17, 2009).

28.    There is no change—no impact whatsoever—to the available funds in an account when this step occurs.

**B.    BOGC's Account Contract**

29.    Plaintiff has a checking account with BOGC, which is governed by BOGC's standardized Account Documents. The Account Documents indicate that BOGC will only pay overdrafts when an accountholder lacks sufficient funds to pay for a transaction.

30.    For APPSN Transactions, which are immediately deducted from a positive account balance and should be held aside for payment of that same transaction, there are always funds to cover those transactions—yet BOGC assesses OD Fees on them anyway.

31.    The above promises mean that transactions are only overdraft transactions when they are authorized into a negative account balance. Of course, that is not true for APPSN Transactions.

32.    APPSN transactions are always initiated at a time when there are sufficient available funds in the account.

33.     In fact, BOGC actually authorizes transactions on positive funds, claims to set those funds aside on hold, but then fails to use those same funds to settle those same transactions. Instead, it uses a secret posting process described below.

34.     All the above representations and contractual promises are untrue. In fact, BOGC charges OD Fees even when sufficient funds exist to cover transactions that are authorized into a positive balance. No express language in any document states that BOGC may impose OD Fees on any APPSN Transactions.

35.     First, and most fundamentally, BOGC charges OD Fees on debit card transactions for which there are sufficient funds available to cover the transactions. That is despite contractual representations that BOGC will only charge OD Fees on transactions with insufficient available funds to cover a given transaction.

36.     BOGC assesses OD Fees on APPSN Transactions that ***do*** have sufficient funds available to cover them throughout their lifecycle.

37.     BOGC's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so. This discrepancy between BOGC's actual practice and the contract causes accountholders like the Plaintiff to incur more OD Fees than they should.

38.     Next, sufficient funds for APPSN Transactions are actually debited from the account immediately, consistent with standard industry practice.

39.     Because these withdrawals take place upon initiation, they cannot be re-debited later. But that is what BOGC does when it re-debits the account during a secret batch posting process.

40.     In reality, BOGC's actual practice is to deduct the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

7

41.     At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds. As such, BOGC cannot then charge an OD Fee on such transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

42.     Upon information and belief, something more is going on: at the moment a debit card transaction is getting ready to settle, BOGC does something new and unexpected, during the middle of the night, during its nightly batch posting process. Specifically, BOGC releases the hold placed on funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time.

43.     This secret step allows BOGC to charge OD Fees on transactions that never should have caused an overdraft—transactions that were authorized into sufficient funds, and for which BOGC specifically set aside money to pay them.

44.     This discrepancy between BOGC's actual practices and the contract causes accountholders to incur more OD Fees than they should.

45.     In sum, there is a huge gap between BOGC's practices as described in the Account Documents and BOGC's practices in reality.

C.     ***BOGC Abuses Contractual Discretion***

46.     BOGC's treatment of debit card transactions to charge OD Fees is not simply a breach of the express terms of the numerous Account Documents. In addition, BOGC exploits contractual discretion to the detriment of accountholders when it uses these policies.

47.     BOGC uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

48.     BOGC uses this contractual discretion unfairly to extract OD Fees on transactions that no reasonable accountholder would believe could cause OD Fees.

**D.      Reasonable Accountholders Understand Debit Card/POS Transactions Are Debited Immediately**

49.     The assessment of OD Fees on APPSN Transactions is fundamentally inconsistent with immediate deduction and holding of funds for debit card/POS transactions. That is because, if funds are immediately debited from the balance and held, they cannot be depleted by intervening transactions (and it is that subsequent depletion that is the necessary condition of APPSN Transactions). If funds are immediately debited from the available balance, then they are necessarily available to be applied to the debit card transactions for which they are debited.

50.     BOGC was and is aware that this is precisely how accountholders reasonably understand such transactions to work.

51.     BOGC knows that many accountholders prefer debit cards for this very reason. Research indicates that accountholders prefer debit cards as a budgeting device because they do not allow debt like credit cards do, and because the money comes directly out of a checking account.

52.     Consumer Action, a national nonprofit consumer education and advocacy organization, advises consumers determining whether they should use a debit card that "[t]here is no grace period on debit card purchases the way there is on credit card purchases; the money is immediately deducted from your checking account. Also, when you use a debit card you lose the one or two days of 'float' time that a check usually takes to clear." *What Do I Need to Know About Using a Debit Card?*, Consumer Action (Jan. 14, 2019), https://www.consumer-action.org/helpdesk/articles/what_do_i_need_to_know_about_using_a_debit_card (last visited June 4, 2021).

53.     Further, Consumer Action informs consumers that "Debit cards offer the convenience of paying with plastic without the risk of overspending. When you use a debit card, you do not get a monthly bill. You also avoid the finance charges and debt that can come with a credit card if not paid off in full." *Understanding Debit Cards*, Consumer Action, http://www.consumer-action.org/english/articles/understanding_debit_cards (last visited June 4, 2021).

54.     This understanding is a large part of the reason that debit cards have risen in popularity. The number of terminals that accept debit cards in the United States increased by approximately 1.4 million in a recent five year period and, with that increasing ubiquity, consumers have (along with credit cards) viewed debit cards "as a more convenient option than refilling their wallets with cash from an ATM." Maria LaMagna, *Debit Cards Gaining on Case for Smallest Purchases,* MarketWatch, Mar. 23, 2016, http://www.marketwatch.com/story/morepeople-are-using-debit-cards-to-buy-a-pack-of-gum-2016-03-23.

55.     Not only have accountholders increasingly transitioned from cash to debit cards, but they believe that a debit card purchase is the fundamental equivalent of a cash purchase, with the swipe of a card equating to handing over cash, permanently and irreversibly.

56.     BOGC was aware of accountholder perception that debit transactions reduce an available balance *in a specified order*—namely, the moment they are actually initiated—and its account agreement only supports this perception.

### E.     *Plaintiff's Experience*

57.     As examples, on February 10, 2022, April 14, 2021, and February 8, 2021, Plaintiff was assessed OD Fees for debit card transactions that settled those days, despite the fact that positive funds were deducted immediately, prior to those days, for the transaction on which Plaintiff was assessed the OD Fee. At the time that the positive funds were deducted, Plaintiff had a positive balance, which would not have caused an OD Fee.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action on behalf of himself, and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

59.     The proposed classes are defined as:

All BOGC checking account holders in the United States who, during the applicable statute of limitations, were charged OD Fees on transactions that were authorized into a positive available balance (the "National APPSN Class").

All BOGC checking account holders in the State of New York who, during the applicable statute of limitations, were charged OD Fees on transactions that were authorized into a positive available balance (the "New York APPSN Subclass").

The classes are collectively referred to as the "Classes."

60.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

61.     Excluded from the Classes are BOGC, its parents, subsidiaries, affiliates, officers and directors, any entity in which BOGC has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

62.     The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to BOGC's records.

63.     The claims of Plaintiff are typical of the claims of the Classes in that he, like all Class members, was charged improper OD Fees. Plaintiff, like all Class members, has been damaged by BOGC's misconduct in that he paid improper OD Fees.  Furthermore, the factual basis of BOGC's misconduct is common to all Class members and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

64.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

65.     Among the questions of law and fact common to the Classes are whether BOGC:

a.     Charged OD Fees on transactions when those transactions did not overdraw accounts;

b.     Breached its contract with consumers by charging OD Fees on transactions when those transactions did not overdraw accounts;

c.     Breached the covenant of good faith and fair dealing by charging OD Fees on transactions when those transactions did not overdraw accounts;

d.     Whether Plaintiff and the Classes were damaged by BOGC's conduct and if so, the proper measure of damages.

66.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

67.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of BOGC, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and BOGC's misconduct will proceed without remedy.  Moreover, given that the improper fees were assessed in a uniform manner, common issues predominate over any questions, to the extent there are any, affecting only individual members.

68.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would

significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Classes)**

69.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

70.     Plaintiff and BOGC have contracted for bank account deposit, checking, ATM, and debit card services. The contract also does not permit BOGC to charge OD Fees on transactions that do not actually overdraw an account.

71.     Further, under the laws of New York, good faith is an element of every contract, including the instant Account Documents pertaining to the assessment of OD Fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

72.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A failure to act in good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair

13

dealing include evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

73.     BOGC has breached the covenant of good faith and fair dealing in its contract with customers by charging OD Fees on transactions that do not actually overdraw the account *i.e.* when there were sufficient actual funds in the account to cover the transaction.

74.     BOGC also breached the express terms of its contract with Plaintiff and the Classes by charging OD Fees on transactions that do not actually overdraw the account *i.e.* when there were sufficient actual funds in the account to cover the transaction.

75.     Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

76.     Plaintiff and members of the Classes have sustained damages as a result of BOGC's breach of the contract.

## SECOND CLAIM FOR RELIEF
### Violations of New York General Business § 349, *et seq*.
### (On Behalf of Plaintiff and the New York Subclass)

77.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

78.     This claim is asserted on behalf of the members of the New York Subclass under New York's consumer protection law, New York General Business Law § 349, et seq. ("GBL § 349").

79.     BOGC engaged in deceptive acts or practices relating to the imposition of overdraft fees on consumers, in violation of GBL § 349, N.Y. Gen. Bus. Law § 349(a).

80.     GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." *Id*.

81.     BOGC engaged in deceptive acts or practices, unlawful conduct, made affirmative misrepresentations, or otherwise violated GBL § 349 by, *inter alia*, knowingly and intentionally employing an unfair and deceptive policy as described herein.

82.     BOGC also engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated GBL § 349.

83.     BOGC's deceptive acts or practices were "consumer-oriented." *E.g., Wilson v. Northwestern Mut. Ins. Co*., 625 F.3d 54, 64 (2d Cir. 2010) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, NA., 85 N.Y.2d 20, 623 N.Y.S.2d 529, 532-33, 647 N.E.2d 741 (1995)).

84.     BOGC intended that Plaintiff and the members of the New York Subclass rely on the acts of concealment and deception, so that Plaintiff and the members of the New York Subclass would incur additional OD Fees.

85.     BOGC's conduct caused Plaintiff and the members of the New York Subclass to suffer ascertainable losses in the form of improper OD Fees that, but for BOGC's unfair and deceptive policies, would not otherwise have been imposed.

86.     A causal relationship exists between BOGC's unlawful conduct and the ascertainable losses suffered by Plaintiff and the members of the New York Subclass. Had BOGC kept its promises, Plaintiff and the members of the New York Subclass would not have incurred certain OD Fees in violation of GBL § 349.

87.     As redress for BOGC's repeated and ongoing violations of GBL § 349, Plaintiff and the New York Subclass are entitled to, *inter alia*, actual damages, treble damages, declaratory relief, and reasonable attorney's fees. N.Y. Gen. Bus. Law. § 349(h).

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF THE EFTA (REGULATION E), 12 C.F.R. § 1005, *et seq*.;**
**AUTHORITY DERIVED FROM 15 U.S.C. § 1693, *et seq*.**
**(On Behalf of Plaintiff and the Classes)**

88.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

89.    BOGC charged Plaintiff overdraft fees as a result of ATM and non-recurring debit card transactions authorized into a positive balance.

90.    BOGC failed to provide Plaintiff disclosures that fully and accurately described BOGC's overdraft service – i.e., the service under which BOGC would assess overdraft fees as a result of ATM and non-recurring debit card transactions authorized into a positive balance. Specifically, prior to enrolling Plaintiff in the service and charging Plaintiffs overdraft fees as a result of ATM and non-recurring debit card transactions authorized into a positive balance, BOGC failed to provide Plaintiff a segregated, non-misleading and truthful description of its practices, as part of the overdraft service, in assessing overdraft fees as a result of one-time debit card transactions, as required by 12 C.F.R. § 1005.17.

91.    Plaintiff was assessed overdraft fees as a result of debit card transactions being authorized into a positive balance, without his informed, affirmative and written consent, in violation of Regulation E (12 C.F.R. §§1005 et seq.), whose "primary objective" is "the protection of consumers" (§1005.l(b)) and which "carries out the purposes of the [Electronic Fund Transfer Act 15 U.S.C. §§1693 et seq.), the "EFTA"] (§1005. l(b)), whose express "primary objective" is also "the provision of individual consumer rights" (15 U.S.C. §1693(b)).

92.    Due to BOGC's violation of Regulation E (12 C.F.R. § 1005.17), Plaintiff and all members of the Classes are entitled to, and do seek, actual and statutory damages, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C.A. § 1693m.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and members of the Classes demand a jury trial on all claims so triable and judgment as follows:

A.      An order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representative and that Plaintiff's counsel be appointed Class Counsel;

B.      Declaring BOGC's OD Fee policies and practices to be wrongful, unfair, and unconscionable;

C.      Ordering BOGC to immediately cease the wrongful conduct set forth above and enjoining BOGC from conducting business via the unlawful and unfair business acts and practices complained of herein;

D.      Restitution of all wrongful OD Fees paid to BOGC by Plaintiff and members of the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E.      Actual and exemplary damages in an amount to be determined at trial;

F.      Pre-judgment interest at the maximum rate permitted by applicable law;

G.      Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

H.      Granting such other relief as the Court deems just and proper.

## TRIAL BY JURY IS DEMANDED

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated:  April 26, 2022                          Respectfully submitted,

By: */s/ Jeffrey D. Kaliel*
Jeffrey D. Kaliel (Bar Roll No. 518372)
KALIELGOLD PLLC
1100 15th Street NW, 4th Floor
Washington, D.C.  20005
(202) 350-4783
*jkaliel@kalielpllc.com*

Sophia G. Gold (Bar Roll No. 701241)
KALIELGOLD PLLC
950 Gilman Street, Suite 200
Berkeley, CA 94710
(202) 350-4783

sgold@kalielgold.com

*Attorneys for Plaintiff and the Putative Class*