**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ANDREW BROOCKMANN**, on behalf of himself and all others similarly situated,<br><br>                       Plaintiff,<br>    v.<br><br>**THE BANK OF GREENE COUNTY**,<br>                    Defendant. | Case No. 1:22-cv-00390-AMN-ATB |

## <u>UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

Plaintiff, Andrew Broockmann moves this Court for preliminary approval of class action settlement.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

        A.      Procedural History ................................................................................ 2

        B.      Class Counsel's Investigation .............................................................. 2

        C.      Summary of the Settlement Terms ....................................................... 3

                1.      The Class ................................................................................... 3

                2.      Relief for the Benefit of the Class ........................................... 4

                        a.      Settlement Fund & Uncollected APSN Fees ............... 4

                        b.      Distribution of Class Member Payments .................... 4

                        c.      Forgiveness of Uncollected APSN Fees ..................... 5

                        d.      Cessation of the APSN Fee Practice ........................... 5

                        e.      Releases ...................................................................... 5

                        f.      The Notice Program .................................................... 5

                        g.      Named Plaintiff's Service Award ............................... 7

                        h.      Attorneys' Fees and Costs .......................................... 7

III.    ARGUMENT ...................................................................................................... 7

        A.      The Legal Standard for Preliminary Approval ..................................... 7

        B.      This Settlement Satisfies the Criteria for Preliminary Approval .................. 8

                1.      This Settlement Is the Product of Good Faith, Informed and Arm's
                        Length Negotiations ................................................................. 9

                2.      The Facts Support a Preliminary Determination That the Settlement
                        Is Fair, Adequate and Reasonable ....................................... 10

3.      The Risk of Establishing Liability and Damages Demonstrate
        That This Settlement is Within the Range of Reasonableness
        In Light of All Attendant Risks of Litigation and Relative to
        The Best Possible Recovery .................................................................. 11

4.      The Expense, Complexity, and Likely Duration of Further
        Litigation .............................................................................................. 14

5.      The Risk of Maintaining Class Action Status Throughout Trial ........ 16

6.      The Extent of Discovery Completed and the Stage of the
        Proceedings .......................................................................................... 17

7.      The Effectiveness of Distributing Relief, the Release and Equitable
        Treatment of Class Members ............................................................... 18

8.      The Terms of Any Proposed Award of Attorneys' Fees ..................... 18

C.      Certification of the Class is Appropriate .......................................................... 19

D.      The Proposed Notice Program is Constitutionally Sound ................................ 22

E.      Notice Pursuant to the Class Action Fairness Act (CAFA) ............................. 24

F.      Plaintiff's Counsel Should be Appointed Class Counsel .................................. 24

IV.     CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Medical Ass'n v. United Healthcare Corp.*,
   00 Civ. 2800 (LMM), 2009 U.S. Dist. LEXIS 45610 (S.D.N.Y. May 19, 2009).....................11

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)..........................................................................................................19, 21

*Baudin v. Res. Mktg. Corp., LLC*,
   2020 U.S. Dist. LEXIS 146280 (N.D.N.Y. Aug. 13, 2020) .........................................11, 12, 18

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
   07 Civ. 2207 (JGK), 2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 6, 2010) .......................16

*Bodnar v. Bank of Am., N.A.*,
   No. 14-3224, 2016 U.S. Dist. LEXIS 121506 (E.D. Pa. Aug. 4, 2016) ..................................13

*Cavalieri v. GE*, No. 06cv315 (GLS/DRH),
   2009 U.S. Dist. LEXIS 68693 (N.D.N.Y. Aug. 5, 2009) ........................................................16

*Charron v. Weiner*,
   731 F.3d 241 (2d Cir. 2013)...................................................................................................15

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)...................................................................................................10

*Cruz v. Sal-Mark Rest. Corp.*,
   2019 U.S. Dist. LEXIS 13529 (N.D.N.Y. Jan. 28, 2019)....................................12, 14, 17, 18

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)..................................................................................................9, 11

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)...................................................................................................21

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000).....................................................................................................10

*Hanifin v. Accurate Inventory & Calculating Serv.*,
   2014 U.S. Dist. LEXIS 115710 (N.D.N.Y. Aug. 20, 2014) ...................................................15

*Hawthorne v. Umpqua Bank*,
   2015 U.S. Dist. LEXIS 56370 (N.D. Cal. Apr. 28, 2015) ......................................................13

*Hill v. Cty of Montgomery*,
   2020 U.S. Dist. LEXIS 168099 (N.D.N.Y. Sep. 15, 2020) ...................................... 8, 16, 20, 21

*In re Checking Account Overdraft Litig.*,
   No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562 (S.D. Fla. Aug. 2, 2013) ............. 13

*In re Checking Account Overdraft Litig.*,
   No. l:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690 (S.D. Fla. May 22, 2015)............. 13

*In re Global Crossing*,
   225 F.R.D. at 461 ...................................................................................................... 12

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003) ...................... 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................. 11, 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. at 47 .......................................................................................................... 18

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)......................................................................................... 22

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000)........................................................................................... 8

*Kirby v. FIC Rest., Inc.*,
   2020 U.S. Dist. LEXIS 178109 (N.D.N.Y. Sep. 28, 2020) ................................... 8, 15, 19

*Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*,
   2016 U.S. Dist. LEXIS 79043 (N.D.N.Y. June 17, 2016).................................... 11, 12

*Mosser v. TD Bank, N.A.*,
   No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 187627 (S.D. Fla. Mar. 18, 2013)............ 14

*Mullane v. Central Hanover Navy Federal & Trust Co.*,
   339 U.S. 306 (1950)...................................................................................................... 23

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)......................................................................................... 12

*Oneida Indian Nation v. Cty. of Oneida*,
   199 F.R.D. 61 (N.D.N.Y. 2000)..................................................................................... 16

*Parkis v. Microsoft Corp.*,
 No. 5:09-CV-110 (FJS/GHL), 2009 U.S. Dist. LEXIS 47880 (N.D.N.Y. June 4, 2009)......... 15

*Roberts v. Capital One*,
 No. 16 Civ. 4841 (LGS), Dkt. 198 (S.D.N.Y. Dec. 1, 2020).................................................... 13

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
 659 F.3d 234 (2d Cir. 2011).................................................................................................. 21

*Skinner v. Citibank*, N.A.,
 No. 5:12-cv-820 (DNH/DEP), 2014 U.S. Dist. LEXIS 184349 (N.D.N.Y. Apr. 2, 2014)....... 24

*United States v. Glens Falls Newspapers, Inc.*,
 160 F.3d 853 (2d Cir. 1998).............................................................................................. 12, 15

*Wal-Mart Stores v. Visa U.S.A.*,
 396 F.3d 96 (2d Cir. 2005)................................................................................................... 8, 9

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011).............................................................................................................. 20

*Weber v. Align Tech., Inc.*,
 No. 5:07-CV-0535 (GTS/ATB), 2010 U.S. Dist. LEXIS 54187 (N.D.N.Y. June 2, 2010) ..... 21

**Statutes**

28 U.S.C. § 1715(b) ............................................................................................................... 24
28 U.S.C. § 1715(b)(1)-(8) .................................................................................................... 24

**Other Authorities**

*Manual for Compl. Lit.*, § 21.312 ........................................................................................ 23
*Manual for Compl. Lit.*, § 21.632 ........................................................................................ 19
*Manual for Compl. Lit.*, § 21.633 ........................................................................................ 19
*Manual for Compl. Lit.*, § 21.311 ........................................................................................ 23

**Rules**

Fed. R. Civ. P. 23 ........................................................................................ 3, 10, 18, 20, 22, 24

## I.    INTRODUCTION

Plaintiff respectfully moves for Preliminary Approval[1] of the Settlement Agreement and Release, attached as ***Exhibit A***, which will resolve all claims against Defendant Bank of Greene County ("BGC") in the above-captioned Action. The Court should grant Preliminary Approval because the Settlement provides substantial relief for the Class and the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law. Indeed, given the significant risks inherent in this Action, the $1,214,500 Value of the Settlement, consisting of BGC's: (a) cash payment of $1,150,000.00; (b) agreement to forgive, waive, and agree not to collect an additional $64,500 in Uncollected APSN Fees; and (c) the cessation of the challenged APSN fee practice at issue in this case – is an excellent result for the Class. Indeed, the prospective relief alone is likely to save BGC accountholders over $1,000,000 over the next five years alone. Kaliel Decl., ¶ 4.

The Settlement satisfies all Second Circuit criteria for settlement approval. One keystone of this Settlement is that all Class Members will automatically receive their pro rata share of the Net Settlement Fund and Uncollected APSN Fees. There are no claims forms, and Class Members will not be asked to prove they were damaged by BGC's APSN Fee practice. Instead, BGC's data will be used to determine which checking account holders were harmed, and as a result incurred allegedly improper APSN Fees, and a formula will be applied to calculate each Class Member's distribution. Thus, the plan of allocation fairly and adequately accounts for the value of each Class Member's individual claim. In the face of certain risks discussed below, this Settlement is fair and reasonable and merits Preliminary Approval.

---

[1] All capitalized terms used throughout this memorandum have the same meanings as those found in the Settlement Agreement.

## II.    BACKGROUND

### A.    Procedural History

On April 26, 2022, Named Plaintiff filed a putative Class Action Complaint entitled *Broockmann v. The Bank of Greene County* in the United States District Court for the Northern District of New York, Case No. 1:22-cv-00390-MAD-ATB.[2]  Named Plaintiff alleged claims as follows: under count 1, breach of contract and breach of the implied covenant of good faith and fair dealing; under count 2, violations of New York General Business Law Section 349; and under count 3, violation of the Electronic Fund Transfer Act, Regulation E.

On November 16, 2022, the Parties participated in a mediation before Hon. Edward Infante (Ret.), an experienced mediator who has served as a private and court-appointed mediator in thousands of complex commercial cases, including several cases involving the claims at issue in this Action. The Parties accepted a mediator's proposal after the mediation.

Consequently, on December 19, 2022, the Parties notified the Court that they had reached an agreement in principle and the Court stayed all remaining deadlines in the Action. Further negotiations by the Parties resulted in the Settlement reflected in this Agreement.

### B.    Class Counsel's Investigation

Class Counsel spent many hours investigating the claims of several potential plaintiffs against BGC. Kaliel Decl., ¶ 5. Class Counsel interviewed a number of BGC customers to gather information about BGC's disclosures and practices and their potential impact upon consumers, which was essential to counsels' ability to understand the nature of the potential claims and issues, the language of the Account agreement and other documents at issue, and potential remedies. *Id.*

---

[2] As of the Court's Order dated January 19, 2023, this case has been reassigned to U.S. District Judge Anne M. Nardacci.  As such, the case number is now 1:22-cv-00390-AMN-ATB.

Class Counsel expended significant resources researching and developing the legal claims at issue. *Id*., at ¶ 6. They are familiar with the claims as they have litigated and resolved other fee claims with similar factual and legal issues. *Id*. Class Counsel has experience in understanding the damages at issue, the information critical to determine class membership, and the necessary data to calculate each Class Member's damages. *Id*. Class Counsel, along with its fee expert, spent a significant amount of time analyzing data regarding BGC's fee revenue related to the assessment of the APSN Fees at issue. *Id*., at ¶ 7. The Parties conferred regarding the calculations' accuracy, with BGC retaining its own expert. Prior to the mediation, Class Counsel and Plaintiff's expert used this data to analyze the damages at issue. *Id*.

Consequently, Class Counsel mediated with Judge Infante fully informed of the merits of Class Members' claims and negotiated the proposed Settlement while zealously advancing the position of Plaintiff and Class Members and being fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of Plaintiff and the Class. *Id*., at ¶ 8.

In sum, prior to negotiating the Settlement, Class Counsel spent significant time conferring with Plaintiff, investigating facts, researching the law, preparing a well-pleaded complaint, engaging in informal discovery, working with an expert witness, and reviewing important documents and data. *Id*., at ¶ 9. This resulted in the Settlement for which Preliminary Approval is respectfully requested.

C.    **Summary of the Settlement Terms.**

1.    **The Class.**

The Class is a Federal Rule of Civil Procedure 23(b)(3) opt-out class, defined as "those checking account customers of The Bank of Greene County who, from April 26, 2016 to the date the Court issues the Preliminary Approval/Notice Order, while residing in the United States, paid

an overdraft fee on a transaction that The Bank of Greene County determined was authorized into a positive available balance, and for whom that overdraft fee was not refunded." Agreement at ¶ 1(p).

### 2.    Relief for the Benefit of the Class.

#### a.    Settlement Fund & Uncollected APSN Fees

The total Value of the Settlement is $1,215,500 consisting of BGC's: (a) commitment to a establish and pay a cash Settlement Fund of $1,150,000.00; and its (b) agreement to forgive, waive, and not collect $64,500 in Uncollected APSN Fees. Id. at ¶ 1(t); 1(w). The Settlement Fund will be used to: (a) pay Class Members their respective cash payments; (b) Class Counsel for any Court awarded attorneys' fees and costs; (c) any Court awarded Service Award for the Named Plaintiff; (d) Settlement notice and administration costs; and (e) if funds remain after the initial distribution to Class Members to distribute to the *cy pres* recipient. Agreement at ¶ 1(t). Class Members who are entitled to forgiveness, waiver, and the agreement not to collect assessed, but unpaid APSN Fees will receive their benefits from the Uncollected APSN Fees.

Class Members do not have to submit claims or take any other affirmative step to receive relief under the Settlement. Instead, as soon as practicable following the Effective Date of the Settlement, BGC and the Claims Administrator will distribute the Net Settlement Fund to all Class Members. *Id* at ¶ 8(d)(iv).

#### b.    Distribution of Class Member Payments

Class Members who are customers of BGC when the Net Settlement Fund is distributed will receive a credit to any account they are maintaining individually at the time of the credit. *Id.* For Class Members who not current customers of BGC when the Net Settlement Fund is distributed, they shall be sent a check by the Claims Administrator at the address used to provide

4

the Notice, or at such other address as designated by the Class Member. *Id.* The Class Member shall have one-hundred 180 days to negotiate the check. The total value of checks uncashed after 180 days shall be distributed to a Court-approved *cy pres* recipient. *Id., para. 11.*

### c. Forgiveness of Uncollected APSN Fees

Uncollected APSN Fees shall be fully forgiven and BGC will waive its right to collect such fees. *Id.* at ¶ 2. In doing so, BGC shall update any negative reporting to Chexsystems or credit reporting agencies with respect to Class Members who receive such debt forgiveness. *Id.*

### d. Cessation of the APSN Fee Practice

BGC also agrees to cease, effective the date of the Final Approval Order, its practice of charging or collecting APSN Fees.

### e. Releases.

In exchange for the benefits conferred by the Settlement, all Class Members will be deemed to have released BGC from claims relating to the subject matter of the Action. The Releases are set forth in Para. 14 of the Agreement.

### f. The Notice Program.

The Parties recommend Epiq Class Action and Claims Solutions Inc. as the Claims Administrator, one of the leading notice administration firms in the United States. The Claims Administrator will oversee the notice program, which is designed to provide the best notice practicable and is tailored to take advantage of the information BGC has available about the Class. Kaliel Decl., at ¶ 10. The notice program is reasonably calculated to apprise Class Members of the following through the Notice: a description of the material terms of the Settlement; a deadline to exclude themselves from the Class; a deadline to object to the Settlement; the Final Approval Hearing date; and the Settlement Website address to access the Agreement and other related

documents. Agreement, Exhibit 1. The Notice and notice program constitute sufficient notice to all persons entitled to notice, satisfying all applicable requirements of law, including Rule 23 and constitutional due process. Kaliel Decl., at ¶ 11.

The notice program is comprised of three parts: (1) direct Postcard Notice to all Class Members who did not agree to receive notices from BGC by email, or for whom the Claims Administrator is unable to send Email Notice using the email address provided by BGC; (2) direct Email Notice to those Class Members who agreed to receive account statements from BGC by email; and (3) Long Form Notice containing more detail than the Postcard Notice and Email Notice posted on the Settlement Website and available by U.S. mail on request to the Claims Administrator. Agreement at Ex. 1 thereto.

The Long Form Notice will describe the procedure that Class Members must follow to (a) opt-out of the Settlement or (b) object to the Settlement; Class Counsel's application for attorneys' fees, costs and expenses; or the Service Award for the Plaintiff. Specifically, opt-outs must be postmarked no later than the Opt-Out/Objection Deadline, and objections must be postmarked no later than the last day of Opt-Out/Objection Deadline. *Id.* at ¶ 1. For an objection to be valid, it must include: (a) The objector's name, address, telephone number, the last four digits of his or her account number or former account number, and the contact information for any attorney retained by the objector in connection with the objection or otherwise in connection with this case; (b) A statement of the factual and legal basis for each objection and any exhibits the objector wishes the Court to consider in connection with the objection; and (c) A statement as to whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying the counsel by name, address, and telephone number. *Id.* at ¶ 13.

The Settlement Website, which will include hyperlinks to the Agreement, the Long Form

Notice, the Preliminary Approval Order and such other documents as the Parties agrees to post or that the Court orders posted, will be established following Preliminary Approval and prior to the commencement of the notice program. Kaliel Decl., ¶ 12.

**g.    Named Plaintiff's Service Award.**

Class Counsel will seek a Service Award of $7,500 for the Named Plaintiff. Agreement at ¶ 8(d). The Service Award will be paid from the Settlement Fund. The award will compensate the Named Plaintiff for his time and effort and for the risks he assumed in prosecuting the case. Kaliel Decl., ¶ 13. Specifically, Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding documents and information to Class Counsel; (3) participating in conferences with Class Counsel; and (4) reviewing the settlement documentation. *Id.*  In so doing, the Plaintiff were integral to the case. *Id*. BGC does not object to Class Counsel's request for the Service Awards.

**h.    Attorneys' Fees and Costs**.

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs. Kaliel Decl., at ¶ 14. They are entitled to request, and BGC will not oppose, attorneys' fees of up to 33.33% of the Value of the Settlement, as well as reimbursement of litigation costs incurred in connection with the Action. Agreement at ¶ 8(d)(i); Kaliel Decl., at ¶ 15. The Parties negotiated and reached agreement regarding fees, costs and expenses only after agreeing on all material terms of the Settlement. Kaliel Decl. ¶ 16. Such award is subject to this Court's approval and will serve to compensate for the time, risk and expense Plaintiff's counsel incurred pursuing claims for the Class.

## III.    <u>ARGUMENT</u>

7

A.      **The Legal Standard for Preliminary Approval.**

Courts, including the Second Circuit, emphasize the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005). "Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent 'fairness hearing.' The court first must review the proposed terms of settlement and make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *Hill v. Cty of Montgomery*, No. 9:14-cv-00933 (BKS/DJS), 2020 U.S. Dist. LEXIS 168099, at *2-3 (N.D.N.Y. Sep. 15, 2020).

At the final approval stage, the following factors will likely weigh in favor of granting final approval in determining whether the settlement agreement is fair, reasonable, and adequate:

> (A) the class representative and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3);[3] and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). A proposed settlement of a class action should be preliminarily approved where an "agreement achieved through good-faith, non-collusive negotiation." *Joel A. v. Giuliani*, 218 F.3d 132, 144 (2d Cir. 2000). To decide a class settlement is fair, courts must examine its procedural and substantive fairness. *Kirby v. FIC Rest., Inc*., No. 5:19-CV-1306 (FJS/ML), 2020 U.S. Dist. LEXIS 178109, at *4 (N.D.N.Y. Sep. 28, 2020).

B.      **This Settlement Satisfies the Criteria for Preliminary Approval.**

The relevant factors weigh in favor of Preliminary Approval. First, the Settlement was

---

[3] There is no such agreement to be identified. The only agreement is the Settlement Agreement.

reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel and a well-experienced mediator. Furthermore, a review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that the Settlement warrants Preliminary Approval.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiff believes his claims are meritorious and would prevail if he proceeded to trial. BGC argues Plaintiff's claims are unfounded, denies any potential liability as well as Plaintiff's ability to certify a class, and up to the point of settlement indicated a willingness to litigate those claims vigorously. Given the risks, uncertainties, and litigation burdens, BGC agreed to the Settlement terms.

The Parties concluded that the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and finally appellate review. Kaliel Decl., at ¶ 17.

       1.    **This Settlement Is the Product of Good Faith, Informed and Arm's Length Negotiations.**

The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. Kaliel Decl., at ¶ 18. In assessing procedural fairness, courts examine the negotiating process leading to the settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). A strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached after there has been discovery by experienced counsel and after arm's length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116. The experienced mediator's participation demonstrates arm's length negotiations occurred.

Furthermore, Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. Kaliel Decl., at ¶ 19. In negotiating this Settlement, Class Counsel benefited from years of experience and familiarity with the facts of this case as well as with other cases involving similar claims. *Id*. Class Counsel thoroughly investigated and analyzed Plaintiff's claims and engaged in briefing on the motion to amend the operative complaint. *Id*. ¶ 20. They engaged in siginficant discovery and extensive data and damage analysis. *Id*. Class Counsel was also well-positioned to evaluate Plaintiff's claims strengths and weaknesses, and the appropriate basis upon which to settle them, by litigating similar claims in courts across the country. *Id*. at ¶ 21.

### 2.   The Facts Support a Preliminary Determination That the Settlement Is Fair, Adequate and Reasonable.

A preliminary review of the Settlement supports preliminarily approval under Rule 23(e)(2), as amended effective December 1, 2018, and Second Circuit case law. As explained in further detail below, this Settlement meets all of the factors set forth in Rule 23(e)(2).

The Second Circuit has identified nine factors (the Grinnell factors) that should be considered in determining the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). While the Grinnell factors are routinely considered in connection with final approval of class action settlements, the Grinnell

factors are considered a "useful guide" at the preliminary approval stage as well. *Am. Medical Ass'n v. United Healthcare Corp.*, 00 Civ. 2800 (LMM), 2009 U.S. Dist. LEXIS 45610, at *18-19 (S.D.N.Y. May 19, 2009). "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, No. 5:15-cv-00441 (MAD/TWD), 2016 U.S. Dist. LEXIS 79043, at *11 (N.D.N.Y. June 17, 2016). Here, the *Grinnell* factors weigh heavily in favor of Preliminary Approval.[4] These factors remain applicable even after the amendment of Rule 23(e):

> The Court understands the new Rule 23(e) factors to add to, rather than displace, the Grinnell factors. See id. ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). Indeed, there is significant overlap between the Grinnell factors and the Rule 23(e)(2)(C—D) factors, as they both guide a court's substantive, as opposed to procedural, analysis. Accordingly, the Court considers both sets of factors below in its analysis of whether the Court will likely find that the proposed settlement is fair, reasonable, and adequate, and grant final approval.

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).

> ### 3.    The Risks of Establishing Liability and Damages Demonstrate That This Settlement Is Within the Range of Reasonableness in Light of All Attendant Risks of Litigation and Relative to the Best Possible Recovery

Courts typically analyze the final two Grinnell factors together, the range of reasonableness of the settlement in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Baudin v. Res.*

---

[4] The sole *Grinnell* factor which does not favor settlement is the ability of the defendant to withstand a larger settlement; however, "this factor, standing alone, does not suggest that the settlement is unfair." *Baudin*, LLC, 2020 U.S. Dist. LEXIS 146280, at *22 (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)).

*Mktg. Corp., LLC*, No. 1:19-cv-386 (MAD/CFH), 2020 U.S. Dist. LEXIS 146280, at *22 (N.D.N.Y. Aug. 13, 2020); *See e.g., Marroquin Alas*, No. 2016 U.S. Dist. LEXIS 79043, at *14; *Cruz v. Sal-Mark Rest. Corp.*, No. 1:17-CV-0815 (DJS), 2019 U.S. Dist. LEXIS 13529, at *16 (N.D.N.Y. Jan. 28, 2019). The Court need only determine if the settlement falls within a "range of reasonableness" which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Plaintiff and Class Counsel are confident in the strength of their case, but they are also pragmatic in their awareness of the various defenses available to BGC, and the risks inherent to litigation and establishing both liability and damages. This is a crucial factor favoring settlement, as Courts routinely approve settlements where a plaintiff would have faced significant legal and factual obstacles to establishing liability. *Cruz v. Sal-Mark Rest. Corp.*, No. 1:17-CV-0815 (DJS), 2019 U.S. Dist. LEXIS 13529, at *14 (N.D.N.Y. Jan. 28, 2019). Indeed, "[l]itigation inherently involves risks." *Id.* The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of [Plaintiff's] case." *Baudin*, 2020 U.S. Dist. LEXIS 146280, at *23.[5]

The dispute centers on BGC's allegedly unfair and misleading assessment of APSN Fees–claims BGC forcefully denied. With this Settlement, Plaintiff have achieved their desired goal of

---

[5] *See also In re Global Crossing*, 225 F.R.D. at 461 ("the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *12-13 (S.D.N.Y. Sept. 29, 2003) (few jury trials result in full amount of damages claimed).[6] *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial").

compensating class members charged such fees during the 6+ year class period. While Plaintiff's best-case scenario is a 100% refund of the APSN Fees, there was a substantial risk that Plaintiff would not achieve such a result. BGC would have sought summary judgment in its favor after discovery closed. Success on the merits was not certain. BGC contends that the relevant Account agreements are unambiguous, and even if they were, the extrinsic evidence resolves the ambiguity in its favor on the whether the fees at issue are permitted. Thus, although Plaintiff believes he has a strong chance on the merits, Plaintiff might not certify the classes or would lose at summary judgment or trial, or on appeal. Kaliel Decl., at ¶ 22.

For these reasons, the Value of the Settlement, which represents approximately 55% of the APSN Fees allegedly wrongly charged to Class Members, without even including the value of the Bank's agreement to cease assessing APSN Fees going forward, is a very fair and reasonable recovery. The Settlement Fund alone is 52% of the probable damages (not including the valuable prospective relief that this Settlement features). This is a very good result comparing the results in other bank fee cases. *See, e.g., Roberts v. Capital One*, 16 Civ. 4841 (LGS), Dkt. 198 (S.D.N.Y. Dec. 1, 2020) (approving cash fund of approximately 34% of the most likely recoverable damages for class members); *Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 U.S. Dist. LEXIS 121506, at *12 (E.D. Pa. Aug. 4, 2016) (approving a cash fund of between 13%-48% of the maximum amount of damages they may have been able to secure at trial, and describing such a result as a "significant achievement" and outstanding"); *In re Checking Account Overdraft Litig.*, No. l:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690, at *37 (S.D. Fla. May 22, 2015) (approving $31,767,200 settlement representing approximately 35% of the most probable aggregate damages); *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370, at *9 (N.D. Cal. Apr. 28, 2015) (approving $2,900,000 settlement for approximately 38% of what could have been obtained

13

at trial); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562, at *3-4 (S.D. Fla. Aug. 2, 2013) (approving $4,000,000 settlement for 25% of the most probable recoverable damages); *Mosser v. TD Bank, N.A.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 187627, at *83-84 (S.D. Fla. Mar. 18, 2013) (approving $62,000,000 settlement for 42% of the most probable damages and praising it as an "outstanding result").

The success of Plaintiff's claims in future litigation turns on these and other questions that are certain to arise in the context her motion for class certification and at trial, as they have in other similar cases. The legal issues raised in this case have not been decided in the cases in which plaintiffs have sued financial institutions for assessing fees based on the specific contractual language.

Each of these risks, by itself, could easily have impeded Plaintiff's and the Class's success at trial. Under the circumstances, Plaintiff and Class Counsel appropriately determined that Settlement outweighs the gamble of continued litigation. Kaliel Decl., at ¶ 23. Moreover, even if they prevailed at summary judgment and trial, any recovery could be delayed for years by appeals. "Settlement eliminates the risk, expense, and delay inherent in this process." *Cruz*, 2019 U.S. Dist. LEXIS 13529, at *15. The Settlement provides substantial relief without further delay. Kaliel Decl., at ¶ 24.

Further, as discussed above, the Settlement is the product of arm's-length negotiations conducted by the Parties' experienced counsel with the assistance of a well-respected mediator through a fully day mediation session and additional negotiation thereafter. As a result, the Parties have reached a Settlement that Class Counsel believes to be fair, reasonable, and in the Class's best interests. Class Counsel's assessment in this regard is entitled to considerable deference. The $1,214,500 Value of the Settlement is fair and reasonable in light of BGC's defenses, and the

challenging and unpredictable litigation path in the absence of settlement. *Id.* at 25.

### 4.    The Expense, Complexity, and Likely Duration of Further Litigation

The traditional means for handling claims like those at issue here would tax the court system, require an extensive expenditure of public and private resources, and given the relatively small value of the claims of the individual Class Members, is impracticable. Indeed, the complexity, expense, and likely duration of litigation is a critical factor in evaluating a class settlement's reasonableness. *Charron v. Weiner*, 731 F.3d 241, 247 (2d Cir. 2013). Settlements are favored in class actions, which "are generally complex" and "consume tremendous time and financial resources." *Kirby*, 2020 U.S. Dist. LEXIS 178109, at *6.

Recovery by any means other than Settlement would require additional years of litigation here and in the Second Circuit. Delay, at the trial stage, and through post-trial motions and the appellate process, could force the Class to wait even longer for any recovery, further reducing its value.[6]

Approving the Settlement will mean an immediate recovery for Class Members. While Plaintiff believes that the Action has merit and that the class ultimately would prevail at trial, continued litigation would last for an extended period of time before any judgment might be entered. The risk of obtaining class certification and maintaining it through trial is also present. *Hanifin v. Accurate Inventory & Calculating Serv.*, 2014 U.S. Dist. LEXIS 115710, at *13 (N.D.N.Y. Aug. 20, 2014). The Parties would also have to first litigate a motion for class certification. See *e.g.*, *Parkis v. Microsoft Corp.*, No. 5:09-CV-110 (FJS/GHL), 2009 U.S. Dist.

---

[6] *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial").

LEXIS 47880, at *2 (N.D.N.Y. June 4, 2009).

Settling now provides immediate and substantial benefits to thousands of customers, avoiding significant costs and risks of continuing litigation, including considerable fees incurred by experts. This consideration militates heavily in favor of the Settlement as "[the settlement of complex class action litigation is favored by the courts." *Cavalieri v. GE*, No. 06cv315 (GLS/DRH), 2009 U.S. Dist. LEXIS 68693, at *4 (N.D.N.Y. Aug. 5, 2009). Settling now on such favorable terms is, therefore, in the Class's best interests. *See Oneida Indian Nation v. Cty. of Oneida*, 199 F.R.D. 61, 77 (N.D.N.Y. 2000).

Therefore, the proposed Settlement is the best vehicle for Class Members to receive the relief to which they believe they are entitled in a prompt and efficient manner.

**5.    The Risk of Maintaining Class Action Status Throughout Trial**

Whether the Action would have been tried as a class action is also relevant in assessing fairness. *See Hill*, 2020 U.S. Dist. LEXIS 168099, at *10 ("Whether the case would be manageable as a class action at trial is not of consequence here . . . as '[t]he court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.'"). As the Court had not yet certified a class when the Agreement was signed, it is unclear whether certification would have been granted. The difficulty of class certification favors approving the Settlement. *See id. See also Bellifemine v. Sanofi-Aventis U.S. LLC*, 07 Civ. 2207 (JGK), 2010 U.S. Dist. LEXIS 79679, at *11 (S.D.N.Y. Aug. 6, 2010) ("no assurance of obtaining class certification through trial, because a court can reevaluate the appropriateness of certification at any time").

Given BGC's defense of this Action to date, BGC would have vigorously opposed Plaintiff's certification motion, and may have appealed if unsuccessful. It would have argued class

certification is not appropriate on the grounds of typicality, adequacy, predominance, commonality, and numerosity. Success on any one of these grounds could have prevented the maintenance of a class through trial. Further, this litigation activity would have required the Parties to expend significant resources. Kaliel Decl., at ¶ 26. Accordingly, this factor favors Preliminary Approval.

### 6. The Extent of Discovery Completed and the Stage of the Proceedings

This *Grinnell* factor requires that the parties have "engag[ed]in thorough investigation and discovery," enough to recommend settlement to the Court. *Cruz*, 2019 U.S. Dist. LEXIS 13529, at *11. This factor is relevant to the Parties' knowledge of the strengths and weaknesses of the various claims which affects the determination of the settlement's fairness." *Id.* at *10 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery"). Here, Class Counsel devoted substantial time and resources investigating and resolving this case. Plaintiff settled the Action with the benefit of Class Counsel's years of experience litigating cases like this one, informal discovery, and data and damage analysis. Kaliel Decl., at ¶ 27. Due to their extensive experience, the Parties' counsel is well aware of the relative strengths and weaknesses of their respective cases, informing the negotiations between counsel. Class Counsel's analysis allowed them to confidently evaluate Plaintiff's claims' strengths and weaknesses, the prospects for success at class certification and trial, and the merits of claims and defenses, the risks attendant to continued litigation, and the benefits of settling.

The record provides sufficient information for this Court to determine that the Settlement is fair. Class Counsel have shown their willingness to litigate this action and their past experience shows that they will zealously represent their clients. *Id.* at ¶ 28. The litigation has been hard-

fought as the Parties have engaged in motion practice and discovery, and extensive data and damage analysis. Accordingly, this factor also weighs in favor of preliminary approval.

In sum, Plaintiff's recovery noted above for the Class is a very good result given the litigation's complexity and the significant barriers that would loom absent settlement, including motions for class certification and summary judgment, trial, and appeals. "The settlement agreement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of hypothetically larger amount[s] years down the road . . . ." *Cruz*, 2019 U.S. Dist. LEXIS 13529, at *16.

### 7.    The Effectiveness of Distributing Relief, the Release and Equitable Treatment of Class Members

Consideration under the Rule 23(e)(2) factor, which asks whether Class Members are treated equally relative to each other, also favors approval. Consideration here "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Because the Settlement distributes proceeds on a pro rata basis, Class Members will be treated equitably. *Baudin*, 2020 U.S. Dist. LEXIS 146280, at *26 ("[F]inding that the requirement that class members be treated equitably relative to each other is satisfied where each class member was to receive a "pro rata share" of the settlement fund").

Further, the release's scope applies uniformly to Class Members and does not affect apportionment of the relief to Class Members. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 47. The Parties explicitly agree that the Class Release from the Class Members (other than Plaintiff) is not a general release of claims against BGC.

(Agreement ¶¶ 78-81.)  Rather, it is tailored to the Released Claims as defined in the Agreement. *Id.* Accordingly, this Court should find this factor will likely weigh in favor of Final Approval.

### 8.    The Terms of Any Proposed Award of Attorneys' Fees

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs incurred. Kaliel Decl., at ¶ 29. Under the Agreement, Class Counsel are entitled to request, and BGC will not oppose, attorneys' fees of up to 33.33% of the Value of the Settlement (not including prospective relief), as well as reimbursement of litigation costs incurred in connection with the Action. The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all material terms of the Settlement. Kaliel Decl., at ¶ 30. Such award is subject to this Court's approval and will compensate for the time, risk, and expenses incurred pursuing claims for Class Members. Accordingly, this Court should find that this factor will favor granting final approval and should reserve its full analysis for the final approval stage. *See Kirby*, 2020 U.S. Dist. LEXIS 93037, at *14-15.

### C.    Certification of the Class Is Appropriate.

For settlement purposes, Plaintiff respectfully request that the Court certify the Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Further, applying the December 2018 amendments to Rule 23(e)(1), the Court should conclude that it is likely to certify the Class and approve the Settlement as fair, adequate, and reasonable.

Certification of the proposed Class will allow notice of the proposed Settlement to issue to the Class to inform them of the existence and terms of the proposed Settlement; of their right to be heard on its fairness; of their right to opt-out; and of the date, time, and place of the Final Approval

Hearing. *See Manual for Compl. Lit.*, §§ 21.632, 21.633. For purposes of this Settlement only, BGC does not oppose class certification. For the reasons set forth below, certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(3).

Certification under Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the Class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the Class; and (4) the representative parties will fairly and adequately protect the interests of the Class. Rule 23(b)(3) certification is appropriate if questions of law or fact common to the class members predominate over individual issues of law or fact, and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Numerosity. Numerosity is satisfied because the Class consists of thousands of BGC customers, and joinder of all such persons is impracticable. Kaliel Decl., at ¶ 31. See Fed. R. Civ. P. 23(a)(1). A plaintiff does not need show that joinder is impossible, and "need not show the exact number" of class members. *Hill*, 2017 U.S. Dist. LEXIS 221081, at *16-17.

Commonality. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 389-390 (2011) (citation omitted). This "does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Hill*, 2020 U.S. Dist. LEXIS 168099, at *5. Further, even a single common legal or factual

question will suffice. *Hill*, 2018 U.S. Dist. LEXIS 140305, at *36. Here, commonality is readily satisfied. There are multiple questions of law and fact – centering on the alleged systematic practice of assessing fees – that are common to the Class, alleged to have injured all Class Members in the same way, and would generate common answers central to the claims' viability were the Action to be tried. Kaliel Decl., at ¶ 32.

Typicality. For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent Class Members, satisfying Rule 23(a)(3)'s typicality requirement. Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citation omitted).[7] Claims of all members of a purported class need not be identical. Plaintiff is typical of absent Class Members because he was subjected to the same BGC practices leading to the assessment of fees and suffered from the same injuries, and will benefit equally from the relief provided by the Settlement. Kaliel Decl., at ¶ 33.

Adequacy. Plaintiff and Class Counsel satisfy Rule 23(a)(4)'s adequacy of representation requirement, which "serves to uncover conflicts of the interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. The analysis of whether a class representative is adequate "is twofold: the proposed class representative must have an interest in

---

[7] Commonality and typicality tend to merge, as "[t]he crux of both requirements is to ensure that maintenance of a class action is economical and that the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Weber v. Align Tech., Inc.*, No. 5:07-CV-0535 (GTS/ATB), 2010 U.S. Dist. LEXIS 54187, at *13 (N.D.N.Y. June 2, 2010). Further, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Hill*, 2017 U.S. Dist. LEXIS 221081, at *22.

vigorously pursuing the claims of the class and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Here, Plaintiff's interests are coextensive with, not antagonistic to, the Class's interests because Plaintiff and the absent Class Members have the same interests in the relief afforded by the Settlement, and absent Class Members have no diverging interests. Kaliel Decl., at ¶ 34. Further, Plaintiff are represented by qualified and competent counsel with extensive experience and expertise prosecuting complex class actions, including similar consumer actions. *Id.* at ¶¶ 2, 35. Class Counsel has devoted substantial time and resources to this Action and will vigorously protect the interests of the Class. *Id.*, at ¶ 36.

Predominance. Certification of the Class is further appropriate because the questions of law or fact common to Class Members predominate over any questions affecting only individual members. See Fed. R. Civ. P. 23(b)(3). For purposes of satisfying Rule 23(b)(3), "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (abrogated on other grounds). This is readily satisfied because liability questions common to all members of the Class substantially outweigh any possible issues that are individual to each member of the Class. Kaliel Decl., at ¶ 37. For example, each Class Member's relationship with BGC arises from Account agreements that are the same or substantially similar in all relevant respects to the other Class Members' agreements, and the fees at issue were charged based on the same set of circumstances alleged to be in breach of the Class Members' form agreements. *Id.*, at ¶ 38.

Superiority. Further, resolution of thousands of claims in one action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. See Fed. R.

Civ. P. 23(b)(3). For these reasons, the Court should certify the Class.

**D.    The Proposed Notice Program Is Constitutionally Sound.**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.*, § 21.312 (internal quotation marks omitted). The best practicable notice is notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Navy Federal & Trust Co.*, 339 U.S. 306, 314 (1950). "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the best notice practicable under the circumstances." *Manual for Compl. Litig.*, § 21.311. Settlement notices under Rule 23 satisfy due process when they adequately advise members of the Classes of their rights under the Settlement, and meets the requirements of due process. The Settlement Notices fairly, plainly, accurately, and reasonably provide Class Members with all required information, including (among other things): (1) a summary of the lawsuit and the claims asserted; (2) a clear definition of the Classes; (3) a description of the material terms of the Settlement; (4) instructions as to how Class Members may make a claim; (5) a disclosure of the release of claims should they choose to remain in the class; (6) an explanation of Class Members' opt-out rights, a date by which Class Members must opt out, and information regarding how to do so; (7) instructions as to how to object to the Settlement and a date by which Class Members must object; (8) the date, time, and location of the final [*9] approval hearing; (9) the internet address for the settlement website and the toll-free number from which Class Members may obtain additional information about the Settlement; and (10) the names

of the law firms representing the Classes, contact information for the lead firms, and information regarding how Class Counsel and the named Named Plaintiff will be compensated. *Skinner v. Citibank*, N.A., No. 5:12-cv-820 (DNH/DEP), 2014 U.S. Dist. LEXIS 184349, at *8-9 (N.D.N.Y. Apr. 2, 2014). The proposed notice program satisfies these content requirements. It is designed to reach a high percentage of the Class by sending Email Notice or Postcard Notice to Class Members and exceeds the requirements of constitutional due process. Kaliel Decl., at ¶ 39. Therefore, the Court should approve the notice program and the form and content of the Notices attached to the Agreement as Exhibit.

### E.    Notice Pursuant to the Class Action Fairness Act (CAFA)

CAFA requires that settling defendants give notice of a proposed class action settlement to appropriate state and federal officials. 28 U.S.C. § 1715(b). The CAFA Notice of Proposed Settlement must supply all of the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8). The Claims Administrator, on behalf of BGC, will serve CAFA Notice within the proper period required, along with a CD containing the documents described in Section 1715(b).

### F.    Plaintiff's Counsel Should Be Appointed Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Court must consider counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation, and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to represent the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As detailed above, Class Counsel diligently investigated and litigated Plaintiff's claims and the feasibility of class certification, and have and will continue to devote substantial time and

resources to this litigation. Class Counsel have extensive experience with similar class action litigation and have been appointed class counsel in many class actions, including many banking fee cases. As such, Class Counsel have an in-depth knowledge of the laws applicable to the Class Members' claims and class certification. See Kaliel Decl., ¶ 40, Ex. 1. Accordingly, the Court should appoint Plaintiff's counsel to serve as Class Counsel for the proposed Class pursuant to Rule 23(g).

## IV.    <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Class, pursuant to Rule 23(a) and 23(b)(3); (3) appoint Plaintiff as Named Plaintiff; (4) approve the notice program and approve the form and content of the Notices attached to the Agreement as Exhibit 1; (5) approve and order the opt-out and objection procedures in the Agreement; (6) stay the Action against BGC pending Final Approval of the Settlement; (7) appoint Jeffrey Kaliel and Sophia Gold of KalielGold PLLC as Class Counsel; and (8) schedule a Final Approval Hearing no sooner than the week of June 19, 2023 (if convenient for the Court). For the Court's convenience, Plaintiff has filed concurrently herewith attach hereto as ***Exhibit B,*** a Proposed Order Preliminarily Approving Class Settlement and Certifying Class and setting forth the various deadlines referenced herein and outlined in the Agreement.

DATED: March 8, 2023                Respectfully submitted,

By:*/s/ Jeffrey D. Kaliel*_____
Jeffrey D. Kaliel (Bar Roll No. 518372)
KALIELGOLD PLLC
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
(202) 350-4783
*jkaliel@kalielpllc.com*

Sophia G. Gold (Bar Roll No. 701241)
KALIELGOLD PLLC

25

950 Gilman Street, Suite 200
Berkeley, CA 94710
(202) 350-4783
sgold@kalielgold.com
*Attorneys for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 8, 2023, the foregoing was served by CM/ECF to all counsel of record.

Respectfully submitted,

*Jeffrey D. Kaliel*
Jeffrey D.  Kaliel