## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANDREW BROOCKMANN**, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br>v.<br><br>**THE BANK OF GREENE COUNTY**,<br>     Defendant. | Case No. 1:22-cv-00390-AMN-ATB |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

  Plaintiff respectfully submits the following Memorandum of Law in Support of his Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs and Service Award.

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................. 1

II. BACKGROUND ................................................................. 2

    A.  Procedural History ................................................... 2

    B.  Class Counsel's Investigation .................................... 3

III. THE SETTLEMENT TERMS ............................................... 4

    A.  The Class ............................................................ 4

    B.  Relief for the Benefit of the Class .............................. 4

        1.  Settlement Fund & Uncollected APSN Fees ............... 4

        2.  Distribution of Class Member Payments ................. 5

        3.  Forgiveness of Uncollected APSN Fees .................. 5

        4.  Cessation of the APSN Fee Practice ..................... 5

    C.  Releases ............................................................ 6

IV. ARGUMENT ................................................................. 6

    A.  The Legal Standard for Final Approval ........................ 6

    B.  This Settlement Satisfies the Criteria for Final Approval ... 7

    C.  This Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations ............................................. 7

    D.  The Facts Support a Determination that the Settlement is Fair, Adequate and Reasonable .......................................... 8

        1.  The Risks of Establishing Liability and Damages ...... 9

        2.  The Reaction of Class Members to the Proposed Settlement ... 11

        3.  The Expense, Complexity and Likely Duration of Further Litigation Favor Settlement .................................... 11

        4.  The Risk of Maintaining Class Action Status Throughout Trial Favors Settlement ....................................... 12

        5.  The Extent of Discovery Completed and the Stage of the Proceedings Favor Settlement ................................. 12

        6.  Effectiveness of Distributing Relief, the Release and Equitable

|  |  |  | Treatment of Class Members Favor Approval ........................................... | 13 |
|  | 7. |  | The Terms of Any Proposed Award of Attorneys' Fees Favor Approval ........................................................................................... | 14 |
| E. |  |  | Notice to the Class Was Adequate and Satisfied Rule 23 and Due Process | 14 |
| F. |  |  | Certification of the Class Is Appropriate ................................................. | 16 |
| G. |  |  | Notice Pursuant to the Class Action Fairness Act (CAFA) ...................... | 16 |
| H. |  |  | Application of Attorneys' Fees ................................................................. | 17 |
|  | 1. |  | The Standard for Awarding Attorneys' Fees to Class Counsel .......... | 17 |
|  | 2. |  | *Goldberg* Factors ............................................................................ | 19 |
|  |  | a. | The Magnitude and Complexities of Litigation ...................... | 19 |
|  |  | b. | Risk of Litigation ................................................................... | 19 |
|  |  | d. | Quality of Representation ....................................................... | 20 |
|  |  | e. | Requested Fee in Relation to the Settlement ......................... | 20 |
|  |  | f. | Public Policy Considerations ................................................. | 23 |
|  |  | g. | The Time and Labor Expended by Counsel and Lodestar Cross-Check ........................................................................... | 23 |
| I. |  |  | Application for Service Award ................................................................. | 24 |
| J. |  |  | Reimbursement of Costs .......................................................................... | 24 |
| V. |  |  | CONCLUSION ........................................................................................... | 25 |

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Baudin v. Res. Mktg. Corp., LLC,
  No. 1:19-cv-386 (MAD/CFH), 2020 U.S. Dist. LEXIS 146280
  (N.D.N.Y. Aug. 13, 2020) ................................................................. 9, 21

Bellifemine v. Sanofi-Aventis U.S. LLC,
  No. 7 Civ. 2207 (JGK), 2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 6, 2010) ................. 12

Bodnar v. Bank of Am., N.A.,
  No. 14-3224, 2016 U.S. Dist. LEXIS 121506 (E.D. Pa. Aug. 4, 2016) ............................ 10, 22

Boeing Co. v. Van Gemert,
  444 U.S. 472 (1980) ............................................................................ 17

Capsolas v. Pasta Res. Inc.,
  No. 10-cv-5595 (RLE), 2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) ...................................... 19

Casto v. City National Bank, N.A.,
  No. 10-C-1089 (Cir. Ct. W.Va.) .................................................................. 22

Central States Southeast & Southwest Areas v. Merck-Medco Managed Care, LLC,
  504 F.3d 229 (2d Cir. 2007) ...................................................................... 17

Charron v. Weiner,
  731 F.3d 241 (2d Cir. 2013) ...................................................................... 11

Christine Asia Co. v. Jack Yun Ma,
  No. 1:15-md-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) 12

D'Amato v. Deutsche Bank,
  236 F.3d 78 (2d Cir. 2001) ........................................................................ 7

Deposit Guar. Nat'l Bank v. Roper,
  445 U.S. 326 (1980) ............................................................................... 23

Farrell v. Bank of Am., N.A.,
  327 F.R.D. 422 (S.D. Cal. 2018), aff'd sub nom. Farrell v. Bank of Am. Corp., N.A.,
  827 F. App'x 628 (9th Cir. 2020) ................................................................. 22

Ferrick v. Spotify USA Inc.,
  No. 16-cv-8412 (AJN), 2018 U.S. Dist. LEXIS 86083 (S.D.N.Y. May 22, 2018) ................. 12

*Figueroa v. Capital One*,
No. 3:18-cv-00692-JM-BGS (S.D. Cal.) ............................................................... 22

*Gilliam v. Addicts Rehab. Ctr. Fund*,
No. 05 Civ. 3452(RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .................................. 19

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000).............................................................. 17, 18, 19, 20, 23

*Guevoura Fund Ltd. v. Sillerman*,
No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116
(S.D.N.Y. Dec. 18, 2019 ...................................................................... 10, 12, 21, 24

*Guippone*,
2016 U.S. Dist. LEXIS 134899 .............................................................................. 12

*Hawkins et al v. First Tenn. Bank, N.A.* (Cir. Ct. Tenn.)............................................ 22

*Hawthorne v. Umpqua Bank*,
No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370 (N.D. Cal. Apr. 28, 2015) .................. 10

*Holt v. Community America Credit Union*,
No. 4:19-CV-00629-FJG (W.D. Mo.).......................................................................... 22

*In re Austrian and German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)......................................................................... 13

*In re Checking Account Overdraft Litig.*,
No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562 (S.D. Fla. Aug. 2, 2013) ............. 10

*In re Checking Account Overdraft Litig.*,
No. 1:09-MD-02036-JLK, 2020 U.S. Dist. LEXIS 142012 (S.D. Fla. Aug. 10, 2020) ........... 22

*In re Checking Account Overdraft Litig.*,
No. l:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690 (S.D. Fla. May 22, 2015)............. 10

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)........................................................... 17, 18, 23

*In re GSE Bonds Antitrust Litig.*,
No. 19-cv-1704 (JSR), 2020 U.S. Dist. LEXIS 104842 (S.D.N.Y. June 16, 2020) .................. 6

*In re Med. X-Ray Film Antitrust Litig.*,
No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)................................................ 19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................. 14

*Jacobs v. Huntington Bancshares Inc.* ...................................................... 22

*Johnson v. BGC, N.A.*,
  No. 12-cv-01405-RDM (M.D. Pa.) ........................................................ 22

*Johnson v. Cmty. Bank, N.A.*,
  No. 3:12-CV-01405, 2013 U.S. Dist. LEXIS 167319 (M.D. Pa. Nov. 25, 2013) ................... 10

*Kelly v. Community Bank, N.A.*,
  No. 8:19-cv-919-MAD-CFH (N.D.N.Y. Feb. 18, 2020) ................................... 10, 21

*Kirby v. FIC Rest., Inc.*,
  No. 5:19-CV-1306 (FJS/ML), 2020 U.S. Dist. LEXIS 178109 (N.D.N.Y. Sep. 28, 2020) ....... 7

*Klein v. PDG Remediation, Inc.*,
  No. 95-cv-4954- DAB, 1999 WL 38179 (S.D.N.Y. Jan. 28, 1999) ........................ 19

*Lambert v. Navy Fed. Credit Union*,
  No. 1:19-cv-103-LO-MSN, 2019 U.S. Dist. LEXIS 138592 (E.D. Va.) ................................. 22

*Landmen Partners, Inc. v. Blackstone Grp., L.P.*,
  No. 08-cv-03601-HB-FM, 2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) ............................ 19

*Liggio v. Apple Federal Credit Union*,
  No. 1:18-cv-01059-LO-MSN (E.D. Va.) ................................................................. 22

*Marroquin Alas v. Champlain Valley Specialty of N.Y.*, Inc.,
  No. 5:15-cv-00441 (MAD/TWD), 2016 U.S. Dist. LEXIS 79043
  (N.D.N.Y. June 17, 2016) ................................................................. 9

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015)................................................... 14

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
  2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) ...................................... 24

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
  No. 06 Civ. 4270(PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ............................ 19, 21

*Molina v. Intrust Bank, N.A.*, ...................................................................... 22

*Nelson v. Rabobank, N.A.*, ........................................................................ 22

*Newman v. Stein,*
  464 F.2d 689 (2d Cir. 1972)...........................................................................9

*Raniere v. Citigroup Inc.,*
  310 F.R.D. 211 (S.D.N.Y. 2015) ...........................................................18, 19

*Roberts v. Capital One, N.A.,*
  719 F. App'x 33 (2d Cir. 2017) ...................................................................19

*Roberts v. Capital One, N.A.,*
  No. 16 Civ. 4841 (LGS) (S.D.N.Y. Dec. 2, 2020)......................................10

*Schulte v. Fifth Third Bank,* ............................................................................22

*Story v. SEFCU,*
  No. 1:18-CV-764 (MAD/DJS), 2021 U.S. Dist. LEXIS 34909
  (N.D.N.Y. Feb. 25, 2021) .......................................................................21, 24

*Swift v BancorpSouth,*
  No. 1:10-cv-00090-GRJ (N.D. Fla.) .............................................................22

*Torres v. Gristede's Operating Corp.,*
  519 F. App'x 1, 3 (2d Cir. 2013) .................................................................18

*Wal-Mart Stores v. Visa U.S.A.,*
  396 F.3d 96 (2d Cir. 2005).................................................6, 8, 14, 17, 18, 20

*White v. Members 1st Federal Credit Union,*
  No. 1:19-cv-00556-JEJ (W.D. Pa.) ..............................................................22

*Wolfgeher v. Commerce Bank, N.A.,*
  No. 1:09-MD-02036-JLK (S.D. Fla.) (Dkt. 3574)........................................22

**Statutes**

28 U.S.C. § 1715.........................................................................................16, 17

**Rules**

F.R.Civ.P. 23........................................................................6, 7, 8, 13, 14

# I.    INTRODUCTION

Plaintiff Andrew Broockmann submits this Memorandum of Law in Support of his Unopposed Motion for Final Approval of Class Settlement and Application for Attorneys' Fees and Costs and Service Award.[1] The Settlement Agreement ("Agreement"), attached as ***Exhibit A***, if approved, will resolve all claims against Defendant Bank of Greene County ("BGC") in the Action. The Settlement should be finally approved because it provides substantial relief for the Class and the Settlement terms are reasonable and consistent with Second Circuit precedent.

Only after a detailed analysis of transactional data to determine damages and only after a mediation in front of a well-respected neutral did the Parties reach an agreement to resolve this matter. Given the material risks inherent in this Action, the Settlement is an excellent result for the Class. The $1,214,500 Value of the Settlement, consisting of BGC's: (a) cash payment of $1,150,000.00; (b) agreement to forgive, waive, and agree not to collect an additional $64,500 in Uncollected APSN Fees; and (c) the cessation of the challenged APSN fee practice at issue in this case—is an excellent result for the Class. Indeed, the prospective relief alone is likely to save BGC accountholders over $1,000,000 over the next five years alone. Kaliel Decl., ¶ 2.

Keystones of the Settlement include that Settlement is that all Class Members will automatically receive their pro rata share of the Net Settlement Fund and Uncollected APSN Fees. There are no claims forms, and Class Members will not be asked to prove they were damaged by BGC's APSN Fee practice. Instead, BGC's data will be used to determine which checking account holders were harmed, and as a result incurred allegedly improper APSN Fees, and a formula will be applied to calculate each Class Member's distribution. Thus, the plan of allocation fairly and

---

[1] All capitalized terms in this memorandum shall have the same meanings as those defined in the Settlement Agreement.

adequately accounts for the value of each Class Member's individual claim. Class Counsel is seeking attorneys' fees of 33.33% of the Value of the Settlement—*not* including the significant value created by the prospective relief included in the Settlement—plus reimbursement of reasonable costs, and a $7,500.00 Service Award for the Plaintiff.

Since Preliminary Approval of the Settlement on May 26, 2023, the Settlement Administrator properly completed the Court-approved Notice Program. To date, no Class Member has objected to the Settlement, Class Counsel's request for attorneys' fees and costs, or the Service Award, and no Class Members have opted-out of the Settlement. The absence of objections and opt-outs to date shows that the Class fully supports approval of the Settlement and that it warrants Final Approval.

In support of the Motion, Plaintiff submits the Declaration from Co-Class Counsel Jeffrey D. Kaliel ("Kaliel Decl."), filed concurrently herewith, and the Declaration from the Settlement Administrator ("Admin. Decl."), filed concurrently herewith. Plaintiff and Class Counsel respectfully request that the Court: (1) grant Final Approval of the Settlement; (2) certify for settlement purposes the Class pursuant to Federal Rule of Civil Procedure 23(b)(3); (3) appoint Named Plaintiff as Class Representative; (4) appoint Class Counsel; (5) grant Class Counsel's Application for Attorneys' Fees and Costs and Service Award; and (6) enter Final Judgment dismissing the Action with prejudice.

## II.    **BACKGROUND**

### I.    **Procedural History**

On April 26, 2022, Named Plaintiff filed a putative Class Action Complaint entitled *Broockmann v. The Bank of Greene County* in the United States District Court for the Northern

District of New York, Case No. 1:22-cv-00390-MAD-ATB.[2]  Named Plaintiff alleged claims as follows: under count 1, breach of contract and breach of the implied covenant of good faith and fair dealing; under count 2, violations of New York General Business Law Section 349; and under count 3, violation of the Electronic Fund Transfer Act, Regulation E.

On November 16, 2022, the Parties participated in a mediation before Hon. Edward Infante (Ret.), an experienced mediator who has served as a private and court-appointed mediator in thousands of complex commercial cases, including several cases involving the claims at issue in this Action. The Parties accepted a mediator's proposal after the mediation.

**B.      Class Counsel's Investigation**

Class Counsel spent many hours investigating the claims of several potential plaintiffs against BGC. Kaliel Decl., ¶ 3. Class Counsel interviewed a number of BGC customers to gather information about BGC's disclosures and practices and their potential impact upon consumers, which was essential to counsels' ability to understand the nature of the potential claims and issues, the language of the Account agreement and other documents at issue, and potential remedies. *Id*.

Class Counsel expended significant resources researching and developing the legal claims at issue. *Id*., at ¶ 4. They are familiar with the claims as they have litigated and resolved other fee claims with similar factual and legal issues. *Id*. Class Counsel has experience in understanding the damages at issue, the information critical to determine class membership, and the necessary data to calculate each Class Member's damages. *Id*. Class Counsel, along with its fee expert, spent a significant amount of time analyzing data regarding BGC's fee revenue related to the assessment of the APSN Fees at issue. *Id*., at ¶ 5. The Parties conferred regarding the calculations' accuracy,

---

[2] As of the Court's Order dated January 19, 2023, this case has been reassigned to U.S. District Judge Anne M. Nardacci.  As such, the case number is now 1:22-cv-00390-AMN-ATB.

with BGC retaining its own expert. Prior to the mediation, Class Counsel and Plaintiff's expert used this data to analyze the damages at issue. *Id.*

Consequently, Class Counsel mediated with Judge Infante fully informed of the merits of Class Members' claims and negotiated the proposed Settlement while zealously advancing the position of Plaintiff and Class Members and being fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of Named Plaintiff and the Class. *Id.*, at ¶ 6.

In sum, prior to negotiating the Settlement, Class Counsel spent significant time conferring with Named Plaintiff, investigating facts, researching the law, preparing a well-pleaded complaint, engaging in informal discovery, working with an expert witness, and reviewing important documents and data. *Id.*, at ¶ 7.

## III.   **THE SETTLEMENT TERMS**

### A.   **The Class.**

The Class is a Federal Rule of Civil Procedure 23(b)(3) opt-out class, defined as "those checking account customers of The Bank of Greene County who, from April 26, 2016 to the date the Court issues the Preliminary Approval/Notice Order, while residing in the United States, paid an overdraft fee on a debit card transaction that The Bank of Greene County determined (using, among other things, statistical analysis) was authorized into a positive available balance, and for whom that overdraft fee was not refunded." Agreement ¶ 1(o)] ¶ 1(p).

### B.   **Relief for the Benefit of the Class.**

#### 1.   **Settlement Fund & Uncollected APSN Fees**

The total Value of the Settlement is $1,214,500—*not* including the significant value created by the prospective relief included in the Settlement—consisting of BGC's: (a) commitment to a establish and pay a cash Settlement Fund of $1,150,000.00; and its (b) agreement to forgive,

waive, and not collect $64,500 in Uncollected APSN Fees. [*Id.* at ¶ 1(s), (u)–(v). The Settlement Fund will be used to: (a) pay Class Members their respective cash payments; (b) Class Counsel for any Court awarded attorneys' fees and costs; (c) any Court awarded Service Award for the Named Plaintiff; (d) Settlement notice and administration costs; and (e) if funds remain after the initial distribution to Class Members, distribute to the *cy pres* recipient. *Id.* at ¶ 1(p), 9, 11–12. Class Members who are entitled to forgiveness, waiver, and the agreement not to collect assessed, but unpaid APSN Fees will receive their benefits from the Uncollected APSN Fees.

Class Members do not have to submit claims or take any other affirmative step to receive relief under the Settlement. *Id.* at ¶ 9(d)(iv).

### 2.  Distribution of Class Member Payments

Class Members who are customers of BGC when the Net Settlement Fund is distributed will receive a credit to any account they are maintaining individually at the time of the credit. *Id.* For Class Members who are not current customers of BGC when the Net Settlement Fund is distributed, they shall be sent a check by the Claims Administrator at the address used to provide the Notice. *Id.* The total value of checks uncashed 230 days after entry of the Court's Final Approval Order shall be distributed to a Court-approved *cy pres* recipient. *Id.* at ¶¶ 1(h), 10, 12.

### 3.  Forgiveness of Uncollected APSN Fees

Uncollected APSN Fees shall be fully forgiven and BGC will waive its right to collect such fees. *Id.* at ¶ 2. In doing so, BGC shall update any negative reporting to Chexsystems or credit reporting agencies with respect to Class Members who receive such debt forgiveness. *Id.*

### 4.  Cessation of the APSN Fee Practice

BGC also agrees to cease, effective the date of the Final Approval Order, its practice of charging or collecting APSN Fees. *Id.*

**C.    Releases**.

In exchange for the benefits conferred by the Settlement, all Class Members will be deemed to have released BGC from claims relating to the subject matter of the Action. The Releases are set forth in Para. 15 of the Agreement.

## IV.    ARGUMENT

**A.    The Legal Standard for Final Approval.**

Courts, including the Second Circuit, have emphasized the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005). Fed. R. Civ. P. 23(e) requires court approval before a class action can be dismissed via a settlement. "In order to grant final approval of a proposed settlement under Federal Rule of Civil Procedure 23(e)(2), the Court must find 'that it is fair, reasonable, and adequate.' The Court considers a number of factors laid out in Rule 23(e)(2) to determine whether this standard has been met." *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR), 2020 U.S. Dist. LEXIS 104842, at *10 (S.D.N.Y. June 16, 2020).

At the final approval stage, Rule 23(e)(2) requires courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3);[3] and
(D) the proposal treats class members equitably relative to each other.

To evaluate the Settlement's fairness, the Court must examine its procedural fairness under

_____

[3] There is no such agreement to be identified. The only agreement is the Settlement Agreement.

Rule 23(e)(2)(A)–(B) and substantive fairness under Rule 23(e)(2)(C)–(D). *Kirby v. FIC Rest., Inc.,* No. 5:19-CV-1306 (FJS/ML), 2020 U.S. Dist. LEXIS 178109, at *4 (N.D.N.Y. Sep. 28, 2020). Both are satisfied.

**B.      This Settlement Satisfies the Criteria for Final Approval.**

The relevant factors weigh in favor of Final Approval. First, the Settlement was reached in the absence of collusion, and is the product of good faith, informed and arm's length negotiations by competent counsel, making it procedurally fair. Furthermore, a review of the substantive factors related to the Settlement's fairness, adequacy and reasonableness demonstrates that Final Approval is warranted. Any settlement requires the parties to balance the claims' merits and the defenses asserted against the attendant risks of continued litigation and delay. Plaintiff believes he asserted meritorious claims and would prevail if this matter proceeded to trial. BGC argues the claims are unfounded, denies any potential liability, and up to the point of settlement indicated a willingness to litigate those claims vigorously. Kaliel Decl. ¶ 8. The Parties concluded that the benefits of settlement outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate review, completing class discovery, pretrial motion practice, trial, and finally appellate review. *Id.*

**C.      This Settlement Is the Product of Good Faith, Informed and Arm's Length Negotiations.**

The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys familiar with class action litigation and with the legal and factual issues of this Action—all occurring before a well-respected neutral with an expertise in these kinds of financial services cases. *Id.* ¶ 9. In assessing procedural fairness, courts examine the negotiating process leading to the settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). A

strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached after discovery by experienced counsel and after arm's length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116.

Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases in the financial services industry. Kaliel Decl. ¶ 10. In negotiating this Settlement in particular, Class Counsel had the benefit of years of experience and familiarity with the facts of this case as well as with other cases involving overdraft fees across the country. *Id*. ¶ 11. Class Counsel conducted a thorough investigation and analysis of Plaintiff's claims and engaged in discovery throughout this Action. *Id*. ¶ 12. Class Counsel reviewed BGC's document production, and reviewed a separate production of transactional data and engaged a data expert to analyze BGC's sample data to determine whether a class could be ascertained and to support Plaintiff's future motion for class certification. *Id*. ¶ 13. Class Counsel was able to accurately evaluate the strengths and weakness of Plaintiff's claims. *Id*. ¶ 14. Finally, Class Counsel used an experienced mediator to achieve this Settlement. This factor, too, supports Final Approval.

### D. The Facts Support a Determination That the Settlement Is Fair, Adequate and Reasonable.

A review of the relevant factors supports a determination that the Settlement should be finally approved under Rule 23(e)(2). The Second Circuit has identified nine *Grinnell* factors that should be considered in determining the substantive fairness of the Settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463. In applying these factors, "not every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, No. 5:15-cv-00441 (MAD/TWD), 2016 U.S. Dist. LEXIS 79043, at *11 (N.D.N.Y. June 17, 2016). As applied here, the *Grinnell* factors weigh heavily in favor of Final Approval.

1.     <u>The Risks of Establishing Liability and Damages</u>

Courts typically analyze the final two *Grinnell* factors together, the range of reasonableness of the settlement in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Baudin v. Res. Mktg. Corp., LLC*, No. 1:19-cv-386 (MAD/CFH), 2020 U.S. Dist. LEXIS 146280, at *22 (N.D.N.Y. Aug. 13, 2020). The Court must decide if the Settlement falls within a "range of reasonableness" which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

The $1,214,500 Value of the Settlement—*not* including the significant value created by the prospective relief included in the Settlement—is an excellent result given the Action's complexity and the significant litigation barriers looming without settlement. The dispute centers on BGC's allegedly unfair and misleading assessment of APSN Fees. With this Settlement, Named Plaintiff has achieved his desired goal of compensating class members charged such fees during the Class Period. While Plaintiff's best-case scenario is a 100% refund of the APSN Fees paid, there was a substantial risk that Plaintiff would not achieve such a result. Success on the merits was not certain. Thus, although Named Plaintiff believes he has a strong case, he might not certify the class or would lose at summary judgment or trial, or on appeal. Kaliel Decl. ¶ 15.

The cash Settlement Fund—which represents approximately 52% of the APSN Fees allegedly wrongly charged and paid by the Class—without the inherent litigation risks, is a very fair and reasonable recovery. This is an excellent result considering the significant risks remaining for the Class and when compared to the results in other bank fee cases. Kaliel Decl. ¶ 16. "The prompt, guaranteed payment of the settlement money increases the settlement's value in comparison to some speculative payment of a hypothetically larger amount years down the road." *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116, at *30 (S.D.N.Y. Dec. 18, 2019) (internal citation omitted); *see Kelly v. Community Bank, N.A.*, No. 8:19-cv-919-MAD-CFH (N.D.N.Y. Feb. 18, 2020) (D'Agostino, J.) (recovery of 39% of damages); *Roberts v. Capital One, N.A.*, No. 16 Civ. 4841 (LGS) (S.D.N.Y. Dec. 2, 2020) ("Class members . . . will receive approximately 35% of the maximum that they could have received."); *Johnson v. Cmty. Bank, N.A.*, No. 3:12-CV-01405, 2013 U.S. Dist. LEXIS 167319, at *17 (M.D. Pa. Nov. 25, 2013) ("the Settlement Fund is estimated at 50% of the most likely recovery"); *see also Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 U.S. Dist. LEXIS 121506, at *12 (E.D. Pa. Aug. 4, 2016) (cash fund of between 13 and 48 percent of the maximum amount of damages they may have been able to secure at trial, and describing such a result as a "significant achievement" and "outstanding"); *In re Checking Account Overdraft Litig.*, No. l:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690, at *37 (S.D. Fla. May 22, 2015) ($31,767,200 settlement representing approximately 35% of the most probable aggregate damages); *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370, at *9 (N.D. Cal. Apr. 28, 2015) ($2.9 million settlement that was approximately 38% of damages); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562, at *3-4 (S.D. Fla. Aug. 2, 2013) ($4,000,000 settlement that was 25% of the most probable recoverable damages).

Under the circumstances, Named Plaintiff and Class Counsel appropriately determined that the Settlement outweighs the gamble of continued litigation. Kaliel Decl. ¶ 17. This Settlement provides substantial relief to Class Members without delay. *Id*. ¶ 18.

Finally, as discussed above, the Settlement is the product of arm's-length negotiations conducted by the Parties' experienced counsel with the assistance of a well-respected mediator. *Id.* ¶ 19. These negotiations led the Parties to a Settlement that Class Counsel believes to be fair, reasonable, and in the best interest of the Class. *Id.* ¶ 20. Given Class Counsel's experience in these cases, Class Counsel's assessment in this regard is entitled to considerable deference.

### 2. The Reaction of Class Members to the Proposed Settlement

The Reaction of the Class has been overwhelmingly positive to date. Out of approximately 17,645 Class Members, none have opted-out by the day this Motion was filed, and no objections have been filed. Admin Decl. ¶ 25. Following the Opt-Out Period and objection deadline, Class Counsel will file an updated declaration from the Settlement Administrator advising the Court as to any additional opt-outs or any objections.

### 3. The Expense, Complexity, and Likely Duration of Further Litigation Favor Settlement

The traditional means for handling claims like those at issue here would tax the court system, require a large expenditure of public and private resources, and given the relatively small value of the claims of the individual Class Members, is impracticable. Indeed, the complexity, expense, and likely duration of litigation is critical in evaluating the reasonableness of a class action settlement. *Charron v. Weiner,* 731 F.3d 241, 247 (2d Cir. 2013).

Recovery by any means other than settlement would require additional years of litigation in this Court and the Second Circuit. Delay, both at the trial stage, and through post-trial motions and appeals, could force the Class to wait even longer, further reducing its value. Kaliel Decl. ¶

21. The proposed Settlement is the best vehicle for Class Members to receive the relief to which they believe they are entitled in a prompt and efficient manner.

4.      The Risk of Maintaining Class Action Status Throughout Trial Favors Settlement

Whether the Action would be tried as a class action is also relevant in assessing the Settlement's fairness. *Guevoura Fund Ltd.*, 2019 U.S. Dist. LEXIS 218116, at *26. As the Court had not yet certified a class when the Agreement was executed, it is unclear whether certification would have been granted. The difficulty of certifying a class favors approving the Settlement. *Guippone*, 2016 U.S. Dist. LEXIS 134899, at *19.[4] BGC intended to vigorously oppose the motion and argue against numerosity, commonality, typicality, adequacy, and predominance. Further, this litigation activity would have required the expenditure of significant resources. Kaliel Decl. ¶ 22. Accordingly, this factor weighs in favor of Final Approval.

5.      The Extent of Discovery Completed and the Stage of the Proceedings Favor Settlement

This *Grinnell* factor requires that the parties have engaged in sufficient investigation of the facts "such that counsel possessed a record sufficient to permit evaluation of the merits of Plaintiff's claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiff's causes of action for purposes of settlement." *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *43. Further, "a sufficient factual investigation must have been conducted to afford the Court the opportunity to 'intelligently make . . . an appraisal' of the Settlement." *Ferrick v. Spotify USA Inc.*, No. 16-cv-8412 (AJN), 2018 U.S. Dist. LEXIS 86083, at *31 (S.D.N.Y. May 22, 2018)

---

[4] *See also Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 7 Civ. 2207 (JGK), 2010 U.S. Dist. LEXIS 79679, at *11 (S.D.N.Y. Aug. 6, 2010) (there "is no assurance of obtaining class certification through trial, because a court can reevaluate the appropriateness of certification at any time during the proceedings.").

(alteration in original) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000)). Class Counsel devoted substantial time and resources investigating, litigating, and resolving this case. Plaintiff settled the Action with the benefit of Class Counsel's years of experience litigating cases like this one, and discovery including data and damage analysis. Kaliel Decl. ¶ 23. Due to their extensive experience, the Parties' counsel is well aware of the relative strengths and weaknesses of their respective cases, informing the negotiations between counsel.

The record provides sufficient information for this Court to determine that the Settlement is fair. Class Counsel have shown their willingness to litigate this action and their past experience shows that they will zealously represent their clients. *Id.* ¶ 24. The litigation has been hard-fought as the Parties have engaged in discovery including extensive data and damage analysis. Accordingly, this factor also weighs in favor of Final Approval. Plaintiff therefore settled the Action with the benefit of fact, expert, and class discovery.

Given the stage of litigation when the Action settled, the Parties are well aware of the relative strengths and weaknesses of their respective positions, having dealt with BGC's efforts to dismiss the claims at their inception and sufficient discovery. The extensive factual and legal analysis along the way fully informed the Settlement negotiations.

      6.      <u>Effectiveness of Distributing Relief, the Release and Equitable Treatment of Class Members Favor Approval</u>

Consideration under the Rule 23(e)(2) factor, which asks whether Class members are treated equally relative to each other, also favors approval. Consideration here "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to

2018 amendment. By distributing Settlement proceeds on a *pro rata* basis, Class Members will be treated equitably. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015). As stated, each member of the class is contracted to receive a proportionate share based on the number of at-issue fees assessed on the Class Members. (Kaliel Decl. ¶ 25; SA ¶ 72 (d)(i-ii).)

Further, the scope of the Releases applies uniformly to Class Members and does not affect the apportionment of the relief to Class Members. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 47 (E.D.N.Y. 2019). The Releases are not a general release of claims against BGC and are instead tailored to the Released Claims as expressly defined in the Agreement. Accordingly, this factor also favors Final Approval.

7.    The Terms of Any Proposed Award of Attorneys' Fees Favor Approval

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs incurred. Under the Agreement, Class Counsel are entitled to request, and BGC does not oppose, attorneys' fees of up to 33.33% of the Value of the Settlement—*not* including the significant value created by the prospective relief included in the Settlement—as well as reimbursement of litigation costs incurred in connection with the Action. Agreement ¶ 9(d)(i). The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all material terms of the Settlement. Kaliel Decl. ¶ 26. Upon consideration of the detailed analysis of Class Counsel's application *infra*, this Court should find that this factor weighs in favor of Final Approval.

E.    **Notice to the Class Was Adequate and Satisfied Rule 23 and Due Process**

In addition to having personal jurisdiction over Named Plaintiff, the Court also has personal jurisdiction over all members of the Class because they received the requisite notice and due process. *Wal-Mart Stores, Inc.*, 396 F.3d at 114 (adequate notice must be fairly understood by the average class member, fairly apprise prospective class members of the proposed settlement

terms and the options open to them and will satisfy due process when it informs class members of the allocation of attorney's fees and provide the final approval hearing date, time, and place).

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information BGC has available about the Class. Admin. Decl. ¶ 5. It was reasonably calculated under the circumstances to apprise Class Members of: the material terms of the Settlement; the deadline for them to exclude themselves from the Class; the deadline to object to the Settlement; the Final Approval Hearing date; and the Settlement Website address to access the Agreement and other related documents and information. The Notice and Notice Program constituted sufficient notice to all persons entitled to notice. The Notice Program satisfied all applicable requirements of law, including Fed. R. Civ. P. 23 and constitutional due process.

Prior to distributing notice to the Class members, the Settlement Administrator established a website, www.ODFeeBGCSettlement.com, as well as a toll-free line that Class Members could access or call for any questions or additional information about the proposed Settlement. Admin Decl. at ¶¶ 20-23.

Once Class Members were identified via BGC's business records, the notices attached to the Settlement Agreement were delivered to each Settlement Class Member. For current BGC accountholders who have elected to receive bank communications via email, notice was delivered via email. *Id.* ¶ 10. To former BGC accountholders, and to all current accountholders who have not elected to receive communications by email or for whom BGC does not have a valid email address, notice was delivered by U.S. Mail postcard. *Id.* ¶ 16.

On June 26, 2023, the Settlement Administrator mailed the Court-approved notice of the Settlement to the 14,161 Settlement Class Members who elected to receive notice from BGC by mail, at their last known mailing addresses after updating through the National Change of Address

database. *Id.* ¶ 16. For returned notices, the Settlement Administrator is performing skip trace searches to attempt to locate an updated address and will remail the notice. *Id.* ¶ 18. In total, mailed Notice was delivered, without return, to 17,490 unique Class members. *Id.* ¶ 19.

Next, on June 26, 2023, the Settlement Administrator emailed the Court-approved notice of the Settlement to 3,484 Class Members who have opted to receive communications from BGC electronically. *Id.* ¶ 10. In total, emailed Notice was delivered, without return, to 3,392 unique Settlement Class Members. *Id.* ¶ 11.

In response to the notice, to date no Settlement Class Member objected to the Settlement. *Id.* ¶ 25. No Settlement Class Members have so far elected to opt-out of the Settlement. *Id.* ¶ 24.

The Settlement Administrator also established and maintains an automated toll-free telephone line to call with Settlement-related inquiries and to receive automated responses, and to accept requests for Long Form Notices. *Id.* ¶ 22. As of July 5, 2023, a total of 51 calls have been made to the toll-free hotline for a total of 121 minutes. *Id.* ¶ 23. Additionally, 242 unique visitors accessed the Settlement Website, viewing 415 pages. *Id.* ¶ 21.

## F.  Certification of the Class Is Appropriate.

In its Preliminary Approval Order, the Court conditionally certified the Class for Settlement purposes. (ECF # 25). Now, for Settlement purposes, Plaintiff respectfully requests that the Court finally certify the Class. As explained at Preliminary Approval and in the Court's order, certification for settlement purposes is appropriate under Fed. R. Civ. P. 23(a) and (b)(3).

## G.  Notice Pursuant to the Class Action Fairness Act (CAFA)

CAFA requires a settling defendant to give notice of a proposed class settlement to appropriate state and federal officials. 28 U.S.C. § 1715(b). The CAFA Notice of Proposed Settlement must supply the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8).

The Settlement Administrator served the CAFA Notice, along with a CD containing the documents described in Section 1715(b). *See* Admin. Decl. ¶ 5. The CAFA notice protects class members from a settlement that may be deemed unfair or inconsistent with regulatory policies and from class action abuse. No regulatory authorities have objected to date.

### H.     Application for Attorneys' Fees

In this common fund Settlement, the Notices to Class Members provided that Class Counsel would request an attorneys' fee of 33.33% of the Value of the Settlement—*not* including the significant value created by the prospective relief included in the Settlement—an amount that equals $404,792.85. As of filing this Motion, there are zero objections to that fee amount, which again was prominently stated in each of the class notices. Class Counsel's application is subject to this Court's approval to compensate them for their time, risk, and expenses incurred pursuing claims for the Class. For the reasons stated below, Class Counsel's application should be approved.

#### 1.     The Standard for Awarding Attorneys' Fees to Class Counsel

"[A]…lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Second Circuit recognizes that a lawyer whose efforts create a common fund should recover a reasonable fee. *Central States Southeast & Southwest Areas v. Merck-Medco Managed Care, LLC*, 504 F.3d 229 (2d Cir. 2007).

In common fund settlements, courts in this Circuit typically look at the percentage-of-the-fund method, with an optional lodestar crosscheck. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). The "'percentage of the fund' method, [ ] is the trend in this Circuit." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) (citing *Wal-Mart Stores*, 396 F.3d at 121). Class Counsel is entitled to "a reasonable fee – set by the court – to

be taken from the fund." *Goldberger*, 209 F.3d 50; *see also* Fed. R. Civ. P. 23(h).

In addition to being far simpler, awarding a percentage of the fund is preferred and "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 348 (quoting *Wal-Mart Stores*, Inc., 396 F.3d at 121). This method further incentivizes class counsel to obtain the largest possible recovery in the most efficient manner possible. *Id.* "The lodestar method, on the other hand, disincentivizes early settlements, tempts lawyers to run up their hours, and 'compels district courts to engage in a gimlet-eyed review of line-item fee audits.'" *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 121). *See also Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 3 (2d Cir. 2013) (trial courts evaluating fee requests "need not, and indeed should not, become green-eyeshade accountants").

The percentage method is an appropriate method of fee recovery here because, among other things, it aligns Class Counsel's interest in being paid a fair fee with the Class's interests. It achieves the maximum recovery in the shortest amount of time required under the circumstances, is supported by public policy, has been recognized as appropriate by the Supreme Court for cases of this nature, and represents the current trend in the Second Circuit.

The 33.33% of the Value of the Settlement requested—*not* including the significant value created by the prospective relief included in the Settlement—is within the range of reason when considering the foregoing and when analyzing the following guidelines set forth by the Second Circuit in *Goldberger*: (1) the time and labor expended by counsel, (2) the magnitude of the litigation, (3) the risk of the litigation, (4) the quality of the representation, (5) the requested fee in

relation to the settlement, and (6) public policy considerations. 209 F.3d at 50.[5] Kaliel Decl. ¶ 27.

2.    *Goldberger* Factors

a.    The Magnitude and Complexities of Litigation

The magnitude and complexity of the litigation weighs in favor of approval. *Raniere*, 310 F.R.D. at 221. This Action is complex presenting novel factual and legal issues, which have yet to be tried in this Court or others. *Id.*; *see also* Kaliel Decl. ¶ 28. Legally, the case involved complex issues which required guidance from the Second Circuit in a similar case, *Roberts v. Capital One, N.A.*, 719 F. App'x 33 (2d Cir. 2017). Factually, the case was difficult as it involved the detailed review of back-end transactional data from BGC, as review of several different versions of binding account contracts during the relevant limitations period. The fundamental contract construction issue remained unresolved when the Parties agreed to settle.  That issue, along with other merits issues and the yet to be filed and decided motion for class certification, would have been litigated aggressively. *Id.* If BGC was successful in opposing class certification or at trial, that would have prevented recovering anything at all. *Id.* ¶ 29.

b.    Risks of Litigation

The Second Circuit has historically labeled the risk of success as ''perhaps the foremost

<hr>

[5] *See, e.g., Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *8 (S.D.N.Y. Oct. 5, 2012) ("Class counsel's request for onethird of the Fund is reasonable and consistent with the norms of class litigation in this circuit"); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (noting "request for 33% of the Settlement Fund is typical"); *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (same); *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, *7 (E.D.N.Y. Aug. 7, 1998) (same); *Klein v. PDG Remediation, Inc.*, No. 95-cv-4954- DAB, 1999 WL 38179, at *4 (S.D.N.Y. Jan. 28, 1999) (same). The one-third award is also common in the Second Circuit in much larger cases as well. See, e.g., *Landmen Partners, Inc. v. Blackstone Grp., L.P.*, No. 08-cv-03601-HB-FM, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (awarding 33.33% of $85 million recovery, plus expenses); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (awarding 33.33% of $586 million).

factor to be considered in determining whether to award an enhancement." *Goldberger*, 209 F.3d at 54). Courts recognize that regardless of the perceived strength of a plaintiff's case, liability is no sure thing. *Wal-Mart Stores, Inc.*, 396 F.3d at 118.

Plaintiff's Counsel took on considerable risk in filing and prosecuting this case. Nevertheless, Class Counsel proceeded with the litigation. Still, the risk remains that without settlement the trier of fact would determine that BGC was permitted to assess the challenged bank fees. *Id.,* at ¶ 30. Thus, Class Counsel certainly invested extensive time and costs with no guarantee of success.

### c. Quality of Representation

Class Counsel are experienced in class action litigation, serving as Lead or Co-Lead Counsel in dozens of consumer class actions in federal and state courts throughout the country. Kaliel Decl. ¶ 31. Counsel used their experience to obtain a great result for the Class. "[T]he quality of representation is best measured by results, and such results may be calculated by comparing 'the extent of possible recovery with the amount of actual verdict or settlement.'" *Goldberger*, 209 F.3d at 55 (citation omitted). Here the Settlement Fund, representing a 52% recovery of the most probable damages, is an excellent result—and that does not even include the additional $64,500 in waived Uncollected Fees still owing by Class Members. Thus, the Court should easily find counsel achieved success. Kaliel Decl. ¶ 32.

### d. Requested Fee in Relation to the Settlement

The $404,792.85 requested fee—which is, again, 33.33% of the Value of the Settlement—*not* including the significant value created by the prospective relief included in the Settlement—is reasonable in light of the work performed, the results obtained, and falls within the range of common fund awards in the Second Circuit. In considering the results, courts examine the value

of both monetary and injunctive relief. *See Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 U.S. Dist. LEXIS 34909, at *25 (N.D.N.Y. Feb. 25, 2021) (holding that the overall value of the settlement, from which attorneys' fees are calculated, comprises monetary as well as non-monetary relief); *Baudin v. Res. Mktg. Corp., LLC*, No. 1:19-cv-386 (MAD/CFH), 2020 U.S. Dist. LEXIS 146280, at *7 (N.D.N.Y. Aug. 13, 2020) (awarding class counsels a 33% of the Settlement Fund). The results achieved here, including recovery of 52% of the disputed amounts plus at least an additional $1,000,000 worth of prospective relief over the next five years demonstrates the excellent results achieved through the Settlement.

As discussed above, courts in this circuit (including in this District) have found an award of 33.33% of a class settlement as the benchmark to be fair, reasonable, and within the range of what is normally awarded for a class settlement. *See Guevoura Fund Ltd.*, 2019 U.S. Dist. LEXIS 218116, at *46 (compiling cases awarding 33% for settlements between $6,750,000 and $21,000,000, and noting reasonable paying clients typically pay one-third pursuant to contingent fee agreements). *See also Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."). Here, the requested fee, 33.33% of the Value of the Settlement, is clearly within the range of acceptable attorneys' fees in Second Circuit cases and is common in overdraft fee litigation. Courts regularly award fees in excess of 30% when awarding attorneys' fees in similar financial services class action settlements. The following depicts these settlements nationwide, all of which resulted in fee awards at or above the 33.33% that Class Counsel requests here:

| Bank Fee Case Name | Percentage of the Fund Awarded |
|---|---|
| *Kelly v. Community Bank,* No. 8:19-cv-00919-MAD-CFH (N.D.N.Y.) | 33% of value of the settlement |

| | |
|---|---|
| *Petrey v. Visions*, No. 3:20-cv-1147 (MAD/ML) (N.D.N.Y.) | 33% of value of the settlement |
| *Lowe v. NBT Bank, N.A.*, No. 3:19-cv-01400-MAD-ML (N.D.N.Y.) | 33% of value of the settlement |
| *Jacobs v. Huntington Bancshares Inc.*, No. 11-cv-000090 (Lake Cnty. Ohio). | 40% of value of settlement, which includes 40% of $8.975 million and 40% of $7 Million in debt forgiveness |
| *Farrell v. Bank of Am., N.A.*, 327 F.R.D. 422 (S.D. Cal. 2018), *aff'd sub nom. Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628 (9th Cir. 2020) | 40% of 37.5 million common fund |
| *Wolfgeher v. Commerce Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) (Dkt. 3574), | **38%** of $18.3 million common fund |
| *Nelson v. Rabobank, N.A.*, No. RIC 1101391 (Cal. Supr. Ct.) | **35.2%** ($750k fee includes % of practice changes) |
| *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2020 U.S. Dist. LEXIS 142012 (S.D. Fla. Aug. 10, 2020) | **35%** of $7.5 million |
| *Molina v. Intrust Bank, N.A.*, No. 10-CV-3686 (Dist. Ct. Ks.) | **33%** of $2.7 million |
| *Hawkins et al v. First Tenn. Bank, N.A.* (Cir. Ct. Tenn.) | **35%** of $16.75 million |
| *Swift v BancorpSouth*, No. 1:10-cv-00090-GRJ (N.D. Fla.) | **35%** of $24 million |
| *Casto v. City National Bank, N.A.*, No. 10-C-1089 (Cir. Ct. W.Va.) | **33.33%** of $3 million |
| *Schulte v. Fifth Third Bank*, No. 09-cv-6655 (N.D. Ill.) | **33.33%** of $9.5 million |
| *Johnson v. BGC, N.A.*, No. 12-cv-01405-RDM (M.D. Pa.) | **33.33%** of $2.5 million |
| *Bodnar v. Bank of America*, No. 5:14-cv-03224-EGS (E.D. Pa.) | **33.33%** of $27 million |
| *Holt v. Community America Credit Union*, No. 4:19-CV-00629-FJG (W.D. Mo.) | **33.33%** of 3.078 million |
| *White v. Members 1st Federal Credit Union*, No. 1:19-cv-00556-JEJ (W.D. Pa.) | **33.33%** of $910,000 |
| *Figueroa v. Capital One*, No. 3:18-cv-00692-JM-BGS (S.D. Cal.) | **33.33%** of $13 million |
| *Liggio v. Apple Federal Credit Union*, No. 1:18-cv-01059-LO-MSN (E.D. Va.) | **33.33%** of $2.7 million |
| *Lambert v. Navy Fed. Credit Union*, No. 1:19-cv-103-LO-MSN, 2019 U.S. Dist. LEXIS 138592, at *3 (E.D. Va.) | **33.33%** of $16 million |

As the requested fee is clearly in line with other similar overdraft litigation around the nation that settled for a similar amount, the fee requested is reasonable.

  e.  <u>Public Policy Considerations</u>

Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Id.* This and the other *Goldberger* factors support approval of the attorneys' fees requested by Class Counsel.

  f.  <u>The Time and Labor Expended by Counsel and Lodestar Cross-Check</u>

"The last Goldberger factor to consider is the time and labor expended by counsel, which is essentially what the lodestar method does by assessing the value of attorney hours worked times a reasonable billing rate." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 353. Under the lodestar method, the court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate" to calculate the "lodestar." *Goldberger*, 209 F.3d at 47. "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

To date, Class Counsel have expended a total of 291 hours in the prosecution of this case, including anticipated time preparing for and attending the Final Approval Hearing. Kaliel Decl., ¶ 33. Further, there will be significant post-Final Approval work ensuring that the Settlement proceeds are properly distributed to Class Members, responding to Class Members' inquiries, and effectuating a secondary or *cy pres* distribution, as needed. *Id.* ¶ 34.

For all the reasons set forth above, the requested fee is appropriate, fair, and reasonable,

and should therefore be approved.

## I.    Application for Service Award

As noted above, a $7,500.00 Service Award is sought for the Named Plaintiff as Class Representative. "Courts regularly grant requests for service awards in class actions 'to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.'" *Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 U.S. Dist. LEXIS 34909, at *28-29 (N.D.N.Y. Feb. 25, 2021). Plaintiff invested significant time in this case and risked his reputation in doing so, by publicly disclosing his personal financial difficulties, creating notoriety regardless of his success on the claims.  Had he failed, they created risk to his reputation. He should be commended for taking action to protect the interests of thousands of BGC accountholders who were affected by BGC's practices, on top of their individual claims. It is undisputed that the Named Plaintiff's efforts have created extraordinary financial benefits for the Class, compensating them for past harm and protecting them from future harm. Named Plaintiff expended hours in advancing this litigation against a large and powerful adversary. He conferred with Class Counsel on a number of occasions. Kaliel Decl. ¶ 35.  Specifically, Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding responsive documents and information; (3) providing discovery documents; and (4) participating in conferences with Class Counsel. *Id.*, ¶ 36.

## J.    Reimbursement of Costs

 "It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class." *Guevoura Fund Ltd.*, 2019 U.S. Dist.

LEXIS 218116, at *67 (citation omitted). Second Circuit courts grant such requests as a matter of course. *Id.* Class Counsel requests reimbursement of $8,595 for actual costs advanced and necessarily incurred in connection with the prosecution and settlement of the Action. Kaliel Decl. ¶ 37. Specifically, those costs and expenses consist of filing fees and service of process costs, pro hac vice admission fees and, most substantially, the services of a well-qualified mediator. *Id.* Class Counsel is not seeking costs related to legal research, copying, and other overhead expenses, which were advanced and are commonly reimbursed. All of these expenses were reasonably and necessarily incurred to pursue this Action. *Id.*

## V.  CONCLUSION

Based on the foregoing, Plaintiff respectfully request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the proposed Class, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3); (3) appoint Named Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys previously appointed in the Preliminary Approval Order; (5) award a Class Representative Service Award in the amount of $7,500.00 ; (6) award attorneys' fees to Class Counsel in an amount of $404,792.85 which is 33.33% of the Value of the Settlement; (7) award Class Counsel reimbursement of litigation costs and expenses in the amount of $8,595.71; and (8) enter final judgment dismissing this Action, and reserving jurisdiction over settlement implementation. For the Court's convenience, a proposed Final Approval Order is filed concurrently herewith.

DATED: July 10, 2023.                              Respectfully submitted,

                                                   */s/ Jeffrey D. Kaliel*
                                                   Jeffrey D. Kaliel (Bar Roll No. 518372)
                                                   **KalielGold PLLC**
                                                   1100 15th Street, NW, 4th Floor
                                                   Washington, D.C.  20005
                                                   Telephone: (202) 350-4783

jkaliel@kalielpllc.com

Sophia Goren Gold (Bar Roll No. 701241)
**KalielGold PLLC**
950 Gilman Street, Suite 200
Berkeley, California 94710
Telephone: (202) 350-4783
sgold@kalielgold.com

*Attorneys for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 10, 2023, the foregoing was filed via CM/ECF, which caused a true and correct copy to be served to all counsel of record.

*/s/ Jeffrey D. Kaliel*
Jeffrey D. Kaliel (Bar Roll No. 518372)