UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANDREW BROOCKMANN**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**THE BANK OF GREENE COUNTY**,<br>Defendant. | Case No. 1:22-cv-00390-MAD-ATB |

**DECLARATION OF JEFFREY D. KALIEL IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS**

I, Jeffrey D. Kaliel, declare:

1. I am Class Counsel of record for Plaintiff Andrew Broockmann and the proposed Settlement Class in the above-captioned matters. I submit this Declaration in support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Expenses and Class Representative Service Award.

2. Only after a detailed analysis of transactional data to determine damages and only after a mediation in front of a well-respected neutral did the Parties reach an agreement to resolve this matter. Given the material risks inherent in this Action, the Settlement is an excellent result for the Class. The $1,214,500 Value of the Settlement, consisting of BGC's: (a) cash payment of $1,150,000.00; (b) agreement to forgive, waive, and agree not to collect an additional $64,500 in Uncollected APSN Fees; and (c) the cessation of the challenged APSN fee practice at issue in this case – is an excellent result for the Class. Indeed, the prospective relief alone is likely to save BGC accountholders over $1,000,000 over the next five years alone.

1

3. Class Counsel spent many hours investigating the claims of several potential plaintiffs against BGC. Class Counsel interviewed a number of BGC customers to gather information about BGC's disclosures and practices and their potential impact upon consumers, which was essential to counsels' ability to understand the nature of the potential claims and issues, the language of the Account agreement and other documents at issue, and potential remedies.

4. Class Counsel expended significant resources researching and developing the legal claims at issue. They are familiar with the claims as they have litigated and resolved other fee claims with similar factual and legal issues. Class Counsel has experience in understanding the damages at issue, the information critical to determine class membership, and the necessary data to calculate each Class Member's damages.

5. Class Counsel, along with its fee expert, spent a significant amount of time analyzing data regarding BGC's fee revenue related to the assessment of the APSN Fees at issue. The Parties conferred regarding the calculations' accuracy, with BGC retaining its own expert. Prior to the mediation, Class Counsel and Plaintiff's expert used this data to analyze the damages at issue.

6. Consequently, Class Counsel mediated with Judge Infante fully informed of the merits of Class Members' claims and negotiated the proposed Settlement while zealously advancing the position of Plaintiff and Class Members and being fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of Named Plaintiff and the Class.

7. In sum, prior to negotiating the Settlement, Class Counsel spent significant time conferring with Named Plaintiff, investigating facts, researching the law, preparing a well-pleaded

complaint, engaging in informal discovery, working with an expert witness, and reviewing important documents and data.

8. Plaintiff believes he asserted meritorious claims and would prevail if this matter proceeded to trial. BGC argues the claims are unfounded, denies any potential liability, and up to the point of settlement indicated a willingness to litigate those claims vigorously. The Parties concluded that the benefits of settlement outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate review, completing class discovery, pretrial motion practice, trial, and finally appellate review.

9. The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys familiar with class action litigation and with the legal and factual issues of this Action—all occurring before a well-respected neutral with an expertise in these kinds of financial services cases.

10. Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases in the financial services industry.

11. In negotiating this Settlement in particular, Class Counsel had the benefit of years of experience and familiarity with the facts of this case as well as with other cases involving overdraft fees across the country.

12. Class Counsel conducted a thorough investigation and analysis of Plaintiff's claims and engaged in discovery throughout this Action.

13. Class Counsel reviewed BGC's document production, and reviewed a separate production of transactional data and engaged a data expert to analyze BGC's sample data to

determine whether a class could be ascertained and to support Plaintiff's future motion for class certification.

14. Class Counsel was able to accurately evaluate the strengths and weakness of Plaintiff's claims.

15. Although Named Plaintiff believes he has a strong case, he might not certify the class or would lose at summary judgment or trial, or on appeal.

16. The cash Settlement Fund represents approximately 52% of the APSN Fees allegedly wrongly charged and paid by the Class, without the inherent litigation risks, is a very fair and reasonable recovery. This is an excellent result considering the significant risks remaining for the Class and when compared to the results in other bank fee cases.

17. Under the circumstances, Named Plaintiff and Class Counsel appropriately determined that the Settlement outweighs the gamble of continued litigation.

18. This Settlement provides substantial relief to Class Members without delay.

19. The Settlement is the product of arm's-length negotiations conducted by the Parties' experienced counsel with the assistance of a well-respected mediator.

20. These negotiations led the Parties to a Settlement that Class Counsel believes to be fair, reasonable, and in the best interest of the Class.

21. Recovery by any means other than settlement would require additional years of litigation in this Court and the Second Circuit. Delay, both at the trial stage, and through post-trial motions and appeals, could force the Class to wait even longer, further reducing its value.

22. This litigation activity would have required the expenditure of significant resources.

23. Plaintiff settled the Action with the benefit of Class Counsel's years of experience litigating cases like this one, and discovery including data and damage analysis.

24. The record provides sufficient information for this Court to determine that the Settlement is fair. Class Counsel have shown their willingness to litigate this action and their past experience shows that they will zealously represent their clients.

25. Each member of the class is contracted to receive a proportionate share based on the number of at-issue fees assessed on the Class Member.

26. The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all material terms of the Settlement.

27. The 33.33% of the Value of the Settlement requested—*not* including the significant value created by the prospective relief included in the Settlement—is within the range of reason when considering the foregoing and when analyzing the following guidelines set forth by the Second Circuit in *Goldberger*: (1) the time and labor expended by counsel, (2) the magnitude of the litigation, (3) the risk of the litigation, (4) the quality of the representation, (5) the requested fee in relation to the settlement, and (6) public policy considerations.

28. This Action is complex presenting novel factual and legal issues, which have yet to be tried in this Court or others. The fundamental contract construction issue remained unresolved when the Parties agreed to settle. That issue, along with other merits issues and the yet to be filed and decided motion for class certification, would have been litigated aggressively.

29. If BGC was successful in opposing class certification or at trial, that would have prevented recovering anything at all.

30. Plaintiff's Counsel took on considerable risk in filing and prosecuting this case. Nevertheless, Class Counsel proceeded with the litigation. Still, the risk remains that without

settlement the trier of fact would determine that BGC was permitted to assess the challenged bank fees.

31. Class Counsel are experienced in class action litigation, serving as Lead or Co-Lead Counsel in dozens of consumer class actions in federal and state courts throughout the country.

32. The Settlement Fund, representing a 52% recovery of the most probable damages, is an excellent result—and that does not even include the additional $64,500 in waived Uncollected Fees still owing by Class Members. Thus, the Court should easily find counsel achieved success.

33. To date, Class Counsel have expended a total of 291 hours in the prosecution of this case, including anticipated time preparing for and attending the Final Approval Hearing.

34. Further, there will be significant post-Final Approval work ensuring that the Settlement proceeds are properly distributed to Class Members, responding to Class Members' inquiries, and effectuating a secondary or *cy pres* distribution, as needed.

35. Plaintiff invested significant time in this case and risked his reputation in doing so, by publicly disclosing his personal financial difficulties, creating notoriety regardless of his success on the claims. Had he failed, they created risk to his reputation. He should be commended for taking action to protect the interests of thousands of BGC accountholders who were affected by BGC's practices, on top of their individual claims. It is undisputed that the Named Plaintiff's efforts have created extraordinary financial benefits for the Class, compensating them for past harm and protecting them from future harm. Named Plaintiff expended hours in advancing this litigation against a large and powerful adversary. He conferred with Class Counsel on a number of occasions.

36. Specifically, Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews

with Class Counsel; (2) locating and forwarding responsive documents and information; (3) providing discovery documents; and (4) participating in conferences with Class Counsel.

37.     Class Counsel requests reimbursement of $8,595.71 for actual costs advanced and necessarily incurred in connection with the prosecution and settlement of the Action. Specifically, those costs and expenses consist of filing fees and service of process costs, pro hac vice admission fees and, most substantially, the services of a well-qualified mediator. Class Counsel is not seeking costs related to legal research, copying, and other overhead expenses, which were advanced and are commonly reimbursed. All of these expenses were reasonably and necessarily incurred to pursue this Action.

| EXPENSES | |
|---|---|
| **Category** | |
| Filing Fees | 402.00 |
| Process Service | $185.75 |
| Mediation Fees | $7,975.00 |
| Copy Charges | $32.96 |
| **Total** | **$8,595.71** |

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed this 10th day of July, 2023, at Washington, D.C.

*/s/ Jeffrey D. Kaliel*
JEFFREY D. KALIEL

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 10, 2023, the foregoing was served by CM/ECF to all counsel of record.

        Respectfully submitted,

        By: *Jeffrey D. Kaliel*
            Jeffrey D. Kaliel