**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ANDREW BROOCKMANN, on behalf of himself and all
others similarly situated,

                                     Plaintiff,

v.

THE BANK OF GREENE COUNTY,

                                    Defendant.

1:22-cv-00390
(AMN/ATB)

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **KALIELGOLD PLLC** | **JEFFREY D. KALIEL, ESQ.** |
| 1100 15th Street NW, 4th Floor | |
| Washington, D.C. 20005 | |
| *Attorneys for Plaintiff* | |
| | |
| **KALIELGOLD PLLC** | **SOPHIA G. GOLD, ESQ.** |
| 950 Gilman Street, Suite 200 | |
| Berkeley, CA 94710 | |
| Washington, D.C. 20005 | |
| *Attorneys for Plaintiff* | |
| | |
| **THOMPSON COBURN HAHN & HESSEN LLP** | **LUKAS SOSNICKI, ESQ.** |
| 10100 Santa Monica Boulevard | |
| Los Angeles, CA 90 | |
| *Attorneys for Defendant* | |
| | |
| **THOMPSON COBURN HAHN & HESSEN LLP** | **MATTHEW B. NEVOLA, ESQ** |
| 488 Madison Avenue | |
| New York, NY 10022 | |
| *Attorneys for Defendant* | |

**Hon. Anne M. Nardacci, United States District Judge:**

1

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

Andrew Broockmann ("Named Plaintiff") brings this putative class action on behalf of himself and similarly situated consumers, through counsel KalielGold PLLC ("Class Counsel"), against Defendant The Bank of Greene County ("BGC"),[1] alleging multiple causes of action stemming from Defendant's alleged practice of assessing an overdraft fee ("OD Fee") on transactions that did not overdraw customers' checking accounts.  *See* Dkt. No. 1.[2]  On June 24, 2022, Defendant filed its Answer.  *See* Dkt. No. 9.

On November 16, 2022, the parties engaged in a mediation before the Hon. Edward Infante. Dkt. No. 26-1 at 10.[3]  On December 19, 2022, the parties informed the Court that they had reached an agreement in principle and on December 21, 2022, the Court stayed all remaining deadlines. *See* Dkt. No. 19; Dkt. No. 24 at 8.  After further negotiations, the parties reached a settlement. Dkt. No. 24 at 20.

On March 8, 2023, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement.  *See* Dkt. No. 24.  On May 26, 2023, the Court granted Preliminary Approval and directed that Notice be sent to the Class Members.  *See* Dkt. No. 25.  On July 10, 2023, Plaintiff filed an Unopposed Motion for Final Approval of Class Action Settlement and Application for

---

[1] While the Complaint, Dkt. No. 1, uses the acronym "BOGC" to refer to The Bank of Greene County, the Court will use the acronym "BGC" which is used in the Motion, *see generally* Dkt. No. 26.

[2] Plaintiff alleged (1) breach of contract and breach of the implied covenant of good faith and fair dealing; (2) violations of New York General Business Law Section 349; and (3) violation of the Electronic Fund Transfer Act, Regulation E.  *See* Dkt. No. 1 at ¶¶ 69-92.

[3] Citations to Court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

Attorneys' Fees and Costs and Service Award (the "Motion").  Dkt. No. 26.[4]  On October 11, 2023, the Court held a Final Approval Hearing during which it signaled its intent to approve the Settlement and requested attorneys' fees, costs, and Service Award, and that a written decision would follow.

For the reasons set forth below, the Court hereby grants Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees and Costs and Service Award.

## II.   BACKGROUND

### A.   Factual Allegations

Defendant is a banking business headquartered in Catskill, New York, engaged in "providing retail banking services to consumers."  Dkt. No. 1 at ¶ 5.[5]  Named Plaintiff is a citizen and resident of Hudson, New York, who has a checking account with BGC.  *Id.* at ¶¶ 4, 8.  The action seeks monetary damages, restitution, and injunctive relief due to Defendant's practice of charging certain OD fees that allegedly violated an account agreement between Plaintiff and Defendant.  *Id.* at ¶ 3.

Plaintiff alleges that Defendant improperly charges OD fees on transactions referred to as

---

[4] Specifically, Plaintiff requests that the Court: "(1) grant Final Approval to the Settlement; (2) certify for settlement purposes the proposed Class, pursuant to Federal Rule of Civil Procedure Rule 23(a) and 23(b)(3); (3) appoint Named Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys previously appointed in the Preliminary Approval Order; (5) award a Class Representative Service Award in the amount of $7,500.00; (6) award attorneys' fees to Class Counsel in an amount of $404,792.85 which is 33.33% of the Value of the Settlement; (7) award Class Counsel reimbursement of litigation costs and expenses in the amount of $8,595.71; and (8) enter final judgment dismissing this Action, and reserving jurisdiction over settlement implementation."  See Dkt. No. 26-1 at 9, 32.

[5] The background factual allegations are taken from the Class Action Complaint.  *See* Dkt. No. 1. Defendant does not concede or admit any wrongdoing.  *See* Dkt. No. 26-1 at 14; Dkt. No. 26-2 at ¶ 8.

Authorize Positive, Purportedly Settle Negative Transactions ("APSN")[6] despite a sufficient available balance in a customer's account at the time the transaction was authorized, but an insufficient available balance at the time the transaction was presented to the Defendant for payment. *Id.* at ¶¶ 11-18.   The Consumer Financial Protection Bureau has described this practice as follows:

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged.

*Id.* at ¶ 18 (citing Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights").

Plaintiff alleges that Defendant's assessment of these OD Fees breaches the contract between Defendant and customers which provides that Defendant "will only charge OD Fees on transactions that have insufficient funds to cover that transaction," and breaches the covenant of good faith and fair dealing by charging OD Fees on transactions that have "sufficient actual funds in the account to cover the transaction." *Id.* at ¶¶ 21, 73; *see also id.* at ¶¶ 34, 69-76.   Plaintiff further alleges that Defendant's "deceptive acts or practices relating to the imposition of [OD Fees] on consumers" violates New York General Business Law § 349. *Id.* at ¶¶ 77-87.  Finally, Plaintiff alleges that Defendant violated the Electronic Fund Transfers Act (Regulation E), 12 C.F.R. §§ 1005 *et. seq.*, by failing to provide Plaintiff with "disclosures that fully and accurately describe"

---

[6] While the Complaint, Dkt. No. 1, uses the acronym APPSN to refer to "Authorize Positive, Purportedly Settle Negative Transactions, the Court will use the acronym "APSN" which is used in the Motion, Dkt. No. 26, and the "Settlement Agreement and Release," Dkt. No. 24-1 ("Agreement").

Defendant's OD Fee practices, and by failing to receive Plaintiff's "informed, affirmative, and written consent."  *Id.* at ¶¶ 88-92.

### B.  CAFA Notice

On March 17, 2023, the Settlement Administrator[7] sent notice packets to federal and state officials as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(d).  *See* Dkt. No. 26-3 at ¶ 5.[8]

### C.  Notice to Class Members[9]

Prior to distributing notice to the Class Members, the Settlement Administrator established a website, www.ODFeeBGCSettlement.com, as well as a toll-free line, that Class Members could access or call for any questions or additional information about the proposed Settlement.  Dkt. No. 26-3 at ¶¶ 20-23.

Once Defendant identified Class Members via its business records,[10] the Settlement

---

[7] The Court's Preliminary Approval Order, Dkt. No. 25, appointed Epiq Class Action and Claims Solutions, Inc. ("Epiq") as "Claims Administrator," also known as "Settlement Administrator." Dkt. No. 25 at ¶ 7.  The Settlement Administrator was directed to "cause a copy of the Email Notice or Postcard Notice to be sent to all Class Members in accordance with the Notice program." *Id.* at ¶ 10.

[8] "The CAFA Notice was mailed by certified mail to 56 officials, which included the Attorney General of the United States and the Attorneys General of each of the 50 states, the District of Columbia, and the United States' Territories.  Epiq also sent the CAFA Notice via United Parcel Service ("UPS") to the Attorney General of the United States and the Office of the Comptroller of the Currency."  Dkt. No. 26-3 at ¶ 5.

[9] On September 5, 2023, Plaintiff submitted a "Supplemental Declaration of Edward Dattilo Regarding Implementation of Notice and Settlement Administration," *see* Dkt. No. 27, which supplemented "details provided in the Declaration of Edward Dattilo Regarding Implementation of Notice and Settlement Administration, dated July 7, 2023," *see* Dkt. No. 26-3.

[10] "On June 8, 2023, Counsel for Defendant provided Epiq with one electronic file containing potential Class Member records. The file contained 17,645 records of names, addresses, and email addresses for potential Class Members ("Class Data")."  Dkt. No. 26-3 at ¶ 6.

Administrator delivered the notice attached to the Agreement to each Class Member.  Dkt. No. 26-1 at 22.  On June 26, 2023, the Settlement Administrator mailed the Court-approved notice of the Settlement to the 14,161 Class Members who elected to receive notice from BGC by mail, at their last known mailing address, after updating through the National Change of Address database.  Dkt. No. 26-3 at ¶ 16.  For notices that were returned, the Settlement Administrator performed skip trace searches to attempt to locate an updated address and remail the notice.  *Id.* at ¶ 18.  Additionally, as of July 5, 2023, a Long Form Notice was mailed via First Class U.S. Mail to all persons who submitted a request for one.  *Id.* at ¶ 16.

On June 26, 2023, the Settlement Administrator also emailed the Court-approved notice of the Settlement to the 3,484 Class Members who had opted to receive communications from BGC electronically.  *Id.* at ¶ 10.  As of August 31, 2023, the Settlement Administrator had mailed and emailed Notices to 17,645 Class Members.  Dkt. No. 27 at ¶ 4.[11]  In response to the Notice, no Class Member objected to the Settlement.  *Id.* at ¶ 8.  In addition, no Class Member elected to opt-out of the Settlement.  *Id.* at ¶ 7.[12]

The Settlement Administrator also established and maintains an automated toll-free telephone line to "provide information and accommodate" Settlement-related inquiries.  Dkt. No. 26-3 at ¶ 22.  The toll-free telephone line provides "scripted information about the Settlement in the form of recorded answers to frequently asked questions," and the option of requesting a Long

---

[11] Notice to 542 Class Members was undeliverable, therefore making the deliverable rate 96.92%. Dkt. No. 27 at ¶ 4.

[12] Pursuant to the Preliminary Approval Order, the deadline for Class Members to opt-out of the Settlement and submit objections was August 24, 2023.  Dkt. No. 25 at ¶ 24.

Form Notice in the mail.  *Id.*[13]

### D.  Summary of the Settlement Terms[14]

#### 1.  The Settlement Class and Release

The Settlement Class is defined as "those checking account customers of The Bank of Greene County who, from April 26, 2016 to the date [of the Court's] Preliminary Approval/Notice Order, while residing in the United States, paid an [OD Fee] on a transaction that The Bank of Greene County determined . . . was authorized into a positive available balance, and for whom that [OD Fee] was not refunded."  Dkt. No. 26-1 at 11 (quoting Agreement at ¶ 1(o)).

#### 2.  The Settlement Fund and Uncollected Fees

The total value of the Settlement is $1,214,500.00, which consists of BGC establishing and paying a cash Settlement Fund of $1,150,000.00 and agreeing to forgive, waive, and not collect $64,500.00 in Uncollected OD Fees.[15]  Dkt. No. 26-1 at 8 (citing Agreement at ¶¶ 1(s), (u)-(v)).

The Settlement Fund will be used to pay: (a) Settlement Class Members their respective cash payments; (b) Class Counsel their requested attorneys' fees and costs; (c) the Named Plaintiff a requested Service Award;[16] (d) Settlement notice and administration costs; and (e) if funds remain after the initial distribution to Class Members, the remaining funds to the *cy pres* recipient.

---

[13] As of August 31, 2023, a total of 154 calls have been made to the toll-free hotline for a total of 419 minutes.  Dkt. No. 27 at ¶ 6.  Additionally, as of August 31, 2023, a total of 758 unique visitors accessed the Settlement Website, viewing 1,165 website pages.  *Id*. at ¶ 5.

[14] All Capitalized terms have the same meaning as defined in the Agreement.

[15] "Uncollected [OD] Fees" is defined as "any [OD Fees] that were assessed on Class Members but not paid as of December 22, 2022, and total approximately $64,500."  Agreement at ¶ 1(v).  Defendant agreed to waive the right to collect any Uncollected OD Fees that were assessed to any Class Member from April 26, 2016, to December 22, 2022, and "cease, effective the date of the Final Approval Order, its practice of charging or collecting OD Fees."  *Id.* at ¶ 2.

[16] Named Plaintiff is seeking a service award of $7,500.00 for serving as Class Representative. Dkt. No. 26-1 at 32.

Dkt. No. 26-1 at 12 (citing Agreement at ¶¶ 1(p), 9, 11-12).  Class Members who are entitled to forgiveness, waiver, and the agreement not to collect assessed, but unpaid OD Fees, will also receive the benefit of the Uncollected Fees.  *Id.* (citing Agreement at ¶¶ 1(u), (v)).  Class members do not need to submit a claim or take any other affirmative steps to receive relief under the Agreement.  *Id.* (citing Agreement at ¶ 9(d)(iv)).

### 3.  Allocation Formula

Class Members will receive their pro rata share of payment from the "Net Settlement Fund."[17]  Dkt. No. 26-1 at 8.  Each Class Member's distribution shall be calculated from the "Net Settlement Fund" as follows: "(The Net Settlement Fund / Total '[OD] Fees') x (total '[OD] Fees' paid by the Class Member, as determined by The Bank of Greene County) = Individual Payment."  Agreement at ¶ 9(d).

### 4.  Distribution of Class Member Payments

Class Members who are customers of BGC at the time the Net Settlement Fund is distributed will receive a credit to any account they are maintaining individually.  Dkt. No. 26-1 at 12 (citing Agreement at ¶ 9(d)(iv)).  Class Members who are not customers of BGC at the time the Net Settlement Fund is distributed will be sent a check by the Settlement Administrator at the address used to provide the Notice or at the address designated by the Class Member.  *Id.* (citing Agreement at ¶ 9(d)(iv)).[18]  230 days after entry of the Court's Final Approval Order, the total value of uncashed checks shall be distributed to a Court-approved *cy pres* recipient.  *Id.* (citing Agreement at ¶¶ 1(h), 10, 12).  No portion of the Settlement Fund will revert to Defendant.

---

[17] "Net Settlement Fund" is defined in the Agreement as "the net amount of the Settlement Fund after payment of Court-approved attorneys' fees and costs, any Court-approved service award and the costs of Notice, and any fees paid to the Claims Administrator."  Agreement at ¶ 1(p).

[18] The Class Member shall have 180 days to negotiate the check.  Agreement at ¶ 9(d)(iv).

Agreement at ¶ 9 (v).

### 5. Attorneys' Fees and Costs

Class Counsel have requested an award of attorneys' fees in the amount of $404,792.85, which constitutes 33.33% of the total value of the settlement.  Dkt. No. 26-1 at 32.  Additionally, Class Counsel have requested reimbursement of $8,595.71 in costs incurred to be paid from the Settlement Fund.  *Id*.

### 6. Release

In exchange for "the benefits conferred by the Settlement, all Class Members will be deemed to have released [Defendant] from claims relating to the subject matter of the Action." Dkt. No. 26-1 at 13 (citing Agreement at ¶ 15).

## III.    DISCUSSION

### A. Class Certification

### 1. Rule 23

On May 26, 2023, the Court preliminarily certified the Settlement Class.  *See* Dkt. No. 25. Plaintiff now requests that the Court certify the Class for purposes of effectuating the settlement. "Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in [Fed. R. Civ. P.] 23(a) and (b) have been satisfied."  *In re Am. Int'l Grp., Inc. Sec. Litig. (In re AIG)*, 689 F.3d 229, 238 (2d Cir. 2012) (citation omitted). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems" precluding findings of predominance under Rule 23(b)(3).  *Amchem Prods., Inc.  v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re AIG*, 689 F.3d at 242 ("[M]anageability concerns do not stand in the way of certifying a settlement class").

Rule 23(a) sets forth four prerequisites for class certification: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  The Second Circuit "has also recognized an implied requirement of ascertainability in Rule 23, which demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (internal quotation marks and citation omitted).  A class action may be maintained if the requirements of Rule 23(a) are satisfied and, as relevant here, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility in deciding whether to grant certification." *Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 WL 736962, at *5 (N.D.N.Y. Feb. 25, 2021) (internal quotation marks and citation omitted).

### 2.  Numerosity

Numerosity "is presumed for classes of 40 or more."  *See In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d 686, 700 (S.D.N.Y. 2019) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).  Here, the proposed class satisfies the numerosity requirement because there are over 1,000 Class Members.

### 3.  Commonality

The purpose of the commonality requirement is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Lowe v. NBT Bank, N.A.*, No. 3:19-CV-1400 (MAD) (ML), 2022 WL 4621433, at *4 (N.D.N.Y. Sept. 30, 2022) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). "Although the claims need not be identical, they must share common questions of fact or law." *Id.* (citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005)). Courts liberally construe the commonality requirement. *Id.* (citation omitted).

Here, the proposed Settlement Class also satisfies the commonality requirement. Plaintiff and Class Members bring identical claims, *i.e.*, that Defendant improperly charged OD Fees in violation of the Account Agreements. Courts have found such allegations sufficient to satisfy the commonality requirement. *See, e.g., Lowe*, 2022 WL 4621433, at *5; *Thompson v. Cmty. Bank, N.A.*, No. 8:19-CV-919 (MAD) (CFH), 2021 WL 4084148, at *4 (N.D.N.Y. Sept. 8, 2021).

### 4. Typicality

Rule 23(a)(3) requires that the representative plaintiff's claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that a class representative have "the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *Story*, 2021 WL 736962, at *5 (internal quotation marks and citation omitted). "The requirement is met if . . . (1) [the] 'claims of representative plaintiffs arise from [the] same course of conduct that gives rise to claims of the other class members,' (2) . . . 'the claims are based on the same legal theory,' and (3) . . . 'the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representative.'" *Id.* (quoting *In re Oxford*, 191 F.R.D. at 375).

Named Plaintiff's claims are identical to the Class Members' claims. Named Plaintiff and Class Members entered into the same types of Account Agreements and were allegedly assessed the same OD Fees, and, as such, Named Plaintiff's and Class Members' injuries arise from the same course of conduct. Therefore, the typicality requirement is satisfied. *See Thompson*, 2021 WL 4084148, at *4.

### 5.   Adequacy of the Named Plaintiff and Class Counsel

Under this factor, the Court inquires as to "whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). "The adequacy requirement exists to ensure that the named representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Story*, 2021 WL 736962, at *6 (quoting *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007)).

In the present matter, there is no evidence that the interests of Named Plaintiff and the Class Members are at odds. Rather, the record reflects that Named Plaintiff and the Class Members have the same incentive to maximize their compensation for past harm. Additionally, Class Counsel in this Action have established that they are qualified, experienced, and well able to litigate this Action. Class Counsel are experienced in handling class actions, complex litigation, and claims stemming from assessment of OD fees. *See* Dkt. No. 26-2 at ¶¶ 9-11. As such, the Court finds that the adequacy requirement is met.

### 6.   Certification is Proper Under Rule 23(b)(3)

Pursuant to Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Under Rule 23(b)(3), the "matters pertinent" to these requirements include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3) (A-D). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (citing *Falcon*, 457 U.S. at 157 n.13).

Here, again, Plaintiff has satisfied the requirements of Rule 23(b)(3). As discussed, common questions of law and fact predominate over any questions that might affect the individual Plaintiff. Further, a class action is far superior to requiring each Class Member's claim to be tried individually given the relatively modest value of each Class Member's claim. Additionally, certifying the proposed Settlement Class will conserve judicial resources and is more efficient for the Class Members, particularly those who lack the resources to bring their claims individually. Accordingly, the Court grants Plaintiff's motion insofar as it seeks class certification for settlement purposes.

### B. Fairness of the Proposed Settlement

#### 1. Standard of Review

"The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (citation

omitted).  Under Rule 23(e), a court may grant final approval of a proposed settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To perform this evaluation, courts in this Circuit rely on two overlapping multi-factor tests—the factors enumerated in Rule 23(e)(2) and the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).[19]  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28-29 (E.D.N.Y. 2019).  Rule 23(e)(2) requires courts to consider the following:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[20]  Under *Grinnell*, the Court also considers the following factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]

---

[19] The Court understands the factors set forth in the 2018 amendment of Rule 23(e)(2) as clarifying and supplementing the *Grinnell* factors.  *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("The goal of this amendment is not to displace any factor, but rather to focus . . . on the core concerns of procedure and substance that should guide the decision.").

[20] "Paragraphs (A) and (B) constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.'"  *In re Payment Card*, 330 F.R.D. at 29 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).  Whereas "[p]aragraphs (C) and (D) constitute the 'substantive' analysis factors, and examine '[t]he relief that the settlement is expected to provide to class members . . .'" *Id.* (citation omitted).

(9) the range of reasonableness of the settlement fund to a possible recovery in light
of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citation omitted).

### 2. The Settlement is Procedurally Fair

A "strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation." *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-7192-CM, Case No. 1:18-cv-09784-CM, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) (citations omitted). This presumption of fairness and adequacy applies here.

Based on the submissions before the Court, the Court concludes that the counsel representing the parties are experienced and capable in the litigation at issue here. Further, the parties engaged in extensive arm's-length negotiations after Class Counsel engaged in discovery and data analysis, evaluated the merits of Plaintiff's claims, and participated in a full-day mediation before the Hon. Edward Infante. *See* Dkt. No. 26-1 at 10-11; Dkt. No. 26-2 at ¶ 6. The final terms of the Settlement were memorialized in a comprehensive Agreement. These arm's-length negotiations raise a presumption that the Settlement meets the requirements of due process. *See Story*, 2021 WL 736962, at *7; *Edwards v. Mid-Hudson Valley Fed. Credit Union*, No. 1:22-CV-00562 (TJM) (CFH), 2023 WL 5806409, at *7 (N.D.N.Y. Sept. 7, 2023). Accordingly, the Court finds that the requirements of Rule 23(e)(2)(A)-(B) have been satisfied.

### 3. The Settlement is Substantively Fair

#### a. The Complexity, Expense, and Likely Duration of Litigation

The first *Grinnell* factor evaluates whether the continuation of the litigation would be complex, expensive, and lengthy. *See Grinnell*, 495 F.2d at 463. This case, had it not settled, would have been all three. "Most class actions are inherently complex, and settlement avoids the

15

costs, delays and multitude of other problems associated with them." *Edwards*, 2023 WL 5806409, at *7 (citation omitted). This case is no exception. Additionally, settlement of this matter avoided the delay that necessarily would have followed, including motion practice and the time needed for the Court to act on those motions. Moreover, had the case reached trial, such trial would consume tremendous time and resources for all parties and the Court. *See* Dkt. No. 26-2 at ¶ 21 (noting that "[r]ecovery by any means other than settlement would require additional years of litigation … both at the trial stage, and through post-trial motions and appeals"). Therefore, the first *Grinnell* factor weighs in favor of Final Approval.

### b.  The Reaction of the Class

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Story*, 2021 WL 736962, at *8 (internal quotation marks and citation omitted). "The lack of class member objections may itself be taken as evidencing the fairness of a settlement." *Id.* (internal quotation marks and citation omitted). There is not one Class Member who has opted-out of the Settlement and there have been no objections. As such, this factor favors Final Approval. *See Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

### c.  The Stage of the Proceedings and the Amount of Discovery Completed

"The third *Grinnell* factor considers the amount of discovery completed, with a focus [] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Story*, 2021 WL 736962, at *8 (alternation in original, internal quotation marks and citation omitted). The parties' discovery

meets this standard.  They exchanged discovery as well as a separate production of transactional data, which was analyzed by a data expert.  Therefore, this factor favors Final Approval.

### d.  Risk of Establishing Liability and Damages and Maintaining Class Action

The fourth, fifth, and sixth *Grinnell* factors, which address "the risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial," also strongly support the Settlement.  *See Grinnell*, 495 F.2d at 463.  "In assessing the fourth, fifth, and sixth factors, which are often considered together, the Court is not required to decide the merits of the case, resolve unsettled legal questions, or to foresee with absolute certainty the outcome of the case."  *Story*, 2021 WL 736962, at *8-9 (internal quotation marks and citation omitted).  "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement."  *Id.* (internal quotation marks and citation omitted).  "In assessing the risks, courts recognize that the complexity of Plaintiff's claims ipso facto creates uncertainty."  *Id.* (internal quotation marks and citation omitted).

Here, while Plaintiff and Class Counsel believe that they would prevail on their claims asserted against Defendant, they also recognize the risks and uncertainties inherent in pursuing the action through class certification, summary judgment, trial, and appeal.  A trial on the merits would involve risks for Plaintiff as to both liability and damages.  Plaintiff would have to prove that he and the Settlement Class were improperly charged OD Fees and that the assessment of those fees was in violation of their Account Agreements.  Plaintiff would risk a trier of fact reaching the conclusion that BGC was permitted to assess the OD Fees.

Additionally, there is risk and additional expense associated with obtaining class certification and maintaining both conditional and class certification through trial.  The Court has not certified a Rule 23 class, and such a determination would only be reached after further

discovery and exhaustive briefing by the parties.  Even assuming that the Court granted certification, there is always the risk of decertification after the close of discovery.  *See Story*, 2021 WL 736962, at *9; *Zivali v. AT&T Mobility*, *LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting the defendant's motion to decertify collective action).  Risk, expense, and delay permeate such processes.  As such, the Court finds that the fourth, fifth, and sixth *Grinnell* factors weigh in favor of granting Final Approval.

### e.  Defendant's Ability to Withstand a Greater Judgment

The seventh *Grinnell* factor addresses the defendant's ability to withstand a greater judgment.  *See Grinnell*, 495 F.2d at 463.  "Even assuming that it could withstand a greater judgment, 'this factor, standing alone, does not suggest that the settlement is unfair.'"  *Story*, 2021 WL 736962, at *9 (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)).  "Indeed, a defendant is not required to empty its coffers before a settlement can be found adequate."  *Id.* (internal quotation marks and citation omitted).  Here, this factor is, at best, neutral, and does not suggest that the settlement is unfair.

### f.  Range of Reasonableness

The final two *Grinnell* factors, "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation," also support approval of the settlement. *Grinnell*, 495 F.2d at 463.  "Courts typically analyze the final two *Grinnell* factors together."  *Story*, 2021 WL 736962, at *9 (citing *In re Global Crossing Secs. and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004)).  "In analyzing these two factors, a reviewing court 'consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.'"  *Id.* (quoting

*Grinnell*, 495 F.2d at 462).  "The determination of whether a settlement amount is reasonable 'does not involve the use of a mathematical equation yielding a particularized sum.'"  *Id.* (quoting *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669 (BMC), 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012)).   "Rather, there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Id.* (internal quotation marks and citation omitted).  "Moreover, the settlement amount must be judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs case."  *Id.* (internal quotation marks and citation omitted).  "The overall value of the settlement comprises monetary as well as non-monetary relief." *See id.* (citing *Velez v. Novartis Pharm. Corp.*, No. 04-CV-09194 (CM), 2010 WL 4877852, at *18 (S.D.N.Y. Nov. 30, 2010) (holding that both the monetary and non-monetary relief must be considered in calculating the value of a settlement)).

In the present matter, the total monetary value of the Settlement is $1,214,500.00.  The monetary amount, as well as BGC's promise to cease its practice of charging or collecting OD Fees, represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiff attained class certification, succeeded on all claims at trial, and survived an appeal with the judgment intact.  By Class Counsel's estimation, the monetary value of the Settlement represents approximately 52% of Defendant's potential damages exposure, assuming Plaintiff and the Class Members were to prevail on all of their claims.  The Settlement represents a substantial recovery for Class Members, particularly in light of the risks of litigation. Further, Uncollected OD Fees will be forgiven.  Weighing the benefits of settlement against the

available evidence and the risks associated with proceeding in the litigation, the Court finds that the recovery is fair and reasonable.

### g. **Rule 23(e)(2)(C)-(D)**

Rule 23 also requires the Court to consider whether the relief provided in the Settlement is adequate and whether the proposed Settlement treats Class Members equitably relative to each other. As discussed above, the record demonstrates that the Settlement provides adequate relief to Class Members by avoiding the cost and risk of further litigation and the Parties have proposed an effective method for processing and allocating Class Members' claims. The Agreement's allocation plan calls for Class Members to receive a pro rata share of the Net Settlement Fund or forgiveness of Uncollected OD Fees based upon the number of OD Fees they incurred. *See* Agreement at ¶¶ 1(v), 9(d)(iv). The Court finds that this allocation is reasonable and treats all Class Members in an equitable manner. *See Story*, 2021 WL 736962, at *10 (citations omitted); *Christine Asia Co. v. Yun Ma*, No. 15-MD-2631, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (finding that the requirement that class members be treated equitably relative to each other is satisfied where each class member was to receive a "pro rata share" of the settlement fund).

Finally, as will be discussed in more detail below, Plaintiff's proposed award of attorneys' fees is reasonable and the parties filed the Agreement required by Rule 23(e)(3), including the attorneys' fees awarded pursuant to the Settlement, on the docket. *See* 5 William B. Rubenstein, Newberg on Class Actions § 15:12 (5th ed. 2018).

### C. **Service Award**

Named Plaintiff seeks a Service Award of $7,500.00 for serving as Class Representative. Dkt. No. 26-1 at 31-32. Class Counsel argues that this Service Award is appropriate and

reasonable in light of the substantial and meaningful work that Named Plaintiff has contributed. *Id.* at 31; Dkt. No. 26-2 at ¶ 35.

"Courts regularly grant requests for service awards in class actions to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Story*, 2021 WL 736962, at *11 (internal quotation marks and citation omitted). A Service Award of $7,500.00 for the Named Plaintiff is reasonable and within the range of awards granted in this Circuit. *See Morris v. Affinity Health Plan, Inc*., 859 F. Supp. 2d 611, 624 (S.D.N.Y. 2012) (finding a service award of $7,500.00 reasonable). Accordingly, the Court awards Named Plaintiff a service award of $7,500.00.

### D.  Costs

Class Counsel requests reimbursement of $8,595.71 "for actual costs advanced and necessarily incurred in connection with the prosecution and settlement of the Action" to be paid from the Settlement Fund. Dkt. No. 26-2 at ¶ 37.[21] "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *Story*, 2021 WL 736962, at *11 (internal quotation marks and citation omitted). Here, the Notice informed Class Members that Class Counsel would seek reimbursement of expenses. Dkt. No. 26-3 at 21, 25. The majority of the costs are attributable to mediation fees, which were necessary. *See* Dkt. No. 26-2 at ¶ 37. Accordingly, the Court awards costs in the amount of $8,595.71.

### E.  Settlement Administrator Costs

---

[21] Specifically, Class Counsel requests reimbursement of "filing fees and service of process costs, pro hac vice admission fees" and the services of a mediator. Dkt. No. 26-2 at ¶ 37.

Class Counsel also seeks payment to Epiq, the Settlement Administrator, to be paid out of the Settlement Fund.  Dkt. No. 26-2 at ¶ 37.  Notice of this selection and payment was provided to Class Members and the Court has not received any objections.  The Court finds that this expense is in line with cases of a similar nature.  *See, e.g., Lowe*, 2022 WL 4621433, at *10 (finding that a payment to Epiq, which was selected to serve as the Settlement Administrator, "to be paid out of the Settlement Fund," was "in line with cases of a similar nature"); *Edwards*, 2023 WL 5806409, at *10 (same).  Accordingly, the Court grants Class Counsel's request.

### F. Attorneys' Fees

Class Counsel moves for an award of attorneys' fees in the amount of $404,792.85, which constitutes 33.33% of the value of the Settlement.

### i. Method of Calculating Attorneys' Fees

"Attorneys who create a common fund from which members of a class are compensated are entitled to a reasonable fee—set by the court—to be taken from the fund."  *Story*, 2021 WL 736962, at *11 (internal quotation marks and citation omitted).  "Such a fee award directly depletes the amount by which the class benefits."  *Id.*  "Accordingly, the Court has a duty to award fees with moderation and a regard for the rights of those with an interest in the fund who are not before the Court."  *Id.* (citation omitted).

The Second Circuit has sanctioned two methods—the percentage method and lodestar method—for calculating reasonable attorneys' fees in class actions.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  "The Court has discretion to award fees based on either the percentage method or the lodestar method."  *Story*, 2021 WL 736962, at *11 (citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)).  "Courts in this Circuit routinely use the percentage method to compensate attorneys in common fund cases such as this action."  *Id.* at

*12 (citations omitted).  The "percentage method" is the far simpler method "by which the fee award is some percentage of the fund created for the benefit of the class." *Id.* (internal quotation marks and citations omitted).  Under either method, the touchstone of the inquiry is whether the award is reasonable.  *See Goldberger*, 209 F.3d at 50.  A court determines reasonableness by evaluating: (1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy.  *Id.* (citation omitted).

### a. Comparison to Court-Approved Fees in Other Common Fund Settlements

"In using the percentage of the fund approach, the Court must first determine a baseline reasonable fee percentage in relation to the settlement, using common fund settlements of similar magnitude and complexity as guidance."  *Story*, 2021 WL 736962, at *12 (citation omitted).  "Additionally, a sliding scale approach—awarding a smaller percentage of the settlement as the amount of the settlement fund increases—is appropriate in order to avoid overcompensating the plaintiff's counsel to the detriment of the class members they represent."  *Id.* (citations omitted).

Class Counsel contends that a fee of 33.33% of the value of the Settlement to be payable from the Settlement Fund is reasonable and commonly awarded in cases of this nature.  The Court finds that it is a reasonable baseline in the present matter.  *See Edwards,* 2023 WL 5806409, at *11 (awarding class counsel 33.33% of the Settlement Fund); *Lowe*, 2022 WL 4621433, at *11 (same); *Thompson*, 2021 WL 4084148, at *10 (same); *Baudin v. Res. Mktg. Corp.*, *LLC*, No. 1:19-CV-386, 2020 WL 4732083, at *12 (N.D.N.Y. Aug. 13, 2020) (same).  The Court also notes that the Plaintiff's Motion for Final Approval details the numerous cases in which courts have awarded fees at 33.33%.  *See* Dkt. No. 26-1 at 26 n.5, 28.

### b. Counsel's Time and Labor

Class Counsel expended significant effort to achieve the settlement.  During the formal litigation of this Action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses.   Dkt. No. 26-2 at ¶¶ 3-5, 12.  Class Counsel engaged in discovery. *Id.* at ¶ 13.  Finally, Class Counsel took part in mediation, and negotiated the terms of a favorable settlement for Plaintiff and the Class Members.  *Id.* at ¶¶ 2, 6.

Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases in the financial services industry.  *Id.* at ¶¶ 9-10.  In negotiating this Settlement, Class Counsel had the benefit of years of experience and familiarity with the facts of this case as well as with other cases involving OD Fees across the country.  *Id.* at ¶ 11.

Upon completion of the Agreement, Plaintiff drafted and filed his motion for Preliminary Approval.  *See* Dkt. No. 24.  After Preliminary Approval was granted, Class Counsel worked and communicated with the Settlement Administrator to ensure that the Notice Program was carried out efficiently and correctly.  Further, Class Counsel spent hours preparing the Motion for Final Approval, which included the filing of additional declarations, and preparing for and attending the Final Approval Hearing.  Further, there will be significant post-Final Approval work ensuring that the settlement benefits are properly distributed to Class Members, responding to Class Members' inquiries, and effectuating a secondary or *cy pres* distribution, as needed.  Dkt. No. 26-2 at ¶ 34.

Class Counsel asserts that they spent 291 hours "in the prosecution of this case."  Dkt. No. 26-2 at ¶ 33.  Considering the complexity of class actions in general and the overall result obtained, the Court finds that the time spent by counsel is reasonable and supports the requested award.

### c.  Complexity of the Case

The magnitude and complexity of this case also supports the requested award.  "Most class actions are inherently complex, and settlement avoids the costs, delays and multitudes of other

problems associated with them." *Story*, 2021 WL 736962, at *13 (internal quotation marks and citation omitted).   This case is no exception.   Plaintiff's claims involve complicated banking activities and the analysis of voluminous data, and the application of a complex factual record to various legal claims under state and federal law.

### d.  Risk of Litigation

Class Counsel undertook risk in accepting the case on a contingency basis.  *Story*, 2021 WL 736962, at *13.   In the face of the risk of no recovery, Class Counsel proceeded with the litigation and obtained a favorable outcome for the class.   Thus, Class Counsel invested extensive time and costs with no guarantee of success.

### e.  Quality of the Representation

Class Counsel competently and efficiently represented Plaintiff in prosecuting this Action. As such, this factor supports the requested award.

### f.  Policy Considerations

Lastly, the attorneys' fees award may be altered due to policy considerations.  *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014).   Attorneys' fees should reflect the important public policy goal of "providing lawyers with sufficient incentive to bring common fund cases that serve the public interest."  *Goldberger*, 209 F.3d at 51 (citation omitted). "On the other hand, fees should compensate counsel only for the value they create, or the court risks incentivizing class counsel to settle cases in a manner detrimental to the class."  *Story*, 2021 WL 736962, at *13 (citation omitted).

Class Counsel obtained a favorable settlement in an efficient manner.  Ultimately, Class Counsel's fee award is tied directly to the value of the Settlement they created.  Additionally, as part of the settlement, BGC has promised to cease its practice of charging or collecting OD Fees.

*See* Agreement at ¶ 2.  Accordingly, the Court grants Class Counsel an award of attorneys' fees in the amount of $404,792.85.

### g.  Cy Pres Distribution

Pursuant to the Agreement, no money shall revert to Defendant.  Instead, 230 days after entry of the Court's Final Approval Order, the total value of uncashed checks shall be distributed to a Court-approved *cy pres* recipient.  *Id.* (citing Agreement at ¶¶ 1(h), 10, 12).

## IV.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, Approval of the Service Award, and Approval of Attorneys' Fees and Costs, Dkt. No. 26, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiff's favor and close this case; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  October 25, 2023

Albany, New York

Anne M. Nardacci
U.S. District Judge